**Marshall C. MOORE, Petitioner-Appellant,**

v.

**Jack P. DUCKWORTH, Warden of the Indiana State Prison, Respondent-Appellee.**

**No. 77–1702.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1978.

Decided July 25, 1978.

Rehearing and Rehearing In Banc Denied Aug. 29, 1978.

640

John T. Manning, Indianapolis, Ind., for petitioner-appellant.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before SPRECHER and WOOD, Circuit Judges, and REYNOLDS, Chief District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner-appellant, Marshall C. Moore, appeals from the denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254, in which he asserted: (1) he had been denied due process, having

---

* The Honorable John W. Reynolds, Chief District Judge of the Eastern District of Wisconsin, is sitting by designation.

been convicted even though his guilt was not proved beyond a reasonable doubt; (2) his inability to assist in his own defense at his trial because his memory had been erased through the shock treatments he received during his confinement when he was found incompetent to stand trial was a denial of due process; (3) his confinement by the state for a period of three and one-half years also resulted in the denial of his right to a speedy trial. The district court found against him as to claim (1) and found that he had failed to exhaust available state remedies as to claims (2) and (3).

The facts of the case are briefly as follows:

Petitioner shot and killed his wife in April of 1966 and was indicted for first degree murder. Following a motion by retained counsel for a competency determination, he was examined by two court-appointed psychiatrists. Following a hearing, at which it was determined on the basis of the testimony of the two psychiatrists that petitioner was unfit to stand trial, he was committed to Beatty Hospital until he should become competent to be tried. In April, 1970 the director of the hospital reported that he was competent. At about this time petitioner began to file numerous petitions and motions, which included allegations that his memory had been erased by the shock treatments he had received during his confinement and that he had been denied due process by the length of his detention at the hospital. Various hearings were held throughout this period, relating to both competency and the other issues raised by petitioner in the state courts. In June, 1971 the psychiatrists who had originally examined him again testified, this time stating that he was able to aid his attorney and did understand the charges and proceedings. The court found he was

competent to stand trial. The case proceeded to trial in January of 1972. Following a two day trial, the jury returned a verdict of murder in the second degree, which was affirmed by the Indiana Supreme Court. He filed this petition for a writ of habeas corpus in the district court in March, 1975 and the writ was denied in May, 1977.

## I.

At his trial Moore entered a plea of not guilty by reason of insanity.[1] Thus the state had the burden of proving his sanity beyond a reasonable doubt at the time of the act. *Johnson v. State,* 255 Ind. 324, 264 N.E.2d 57 (1970); *Riggs v. State,* 264 Ind. 263, 342 N.E.2d 838 (1976).

Petitioner asserts that the state failed to meet this burden of proof when it chose to rely on the testimony of lay witnesses rather than producing its own expert witness to either refute or impeach the testimony of the two court-appointed psychiatrists,[2] who testified that in their opinion the petitioner was insane at the time the act occurred. The witnesses the state presented included a neighbor who witnessed the murder, a police officer who saw the petitioner just before and immediately after the shooting, and two of the victim's sisters, both of whom testified that the petitioner told them that he intended to kill his wife and that he would get away with it by pleading insanity.

 The issue of sanity is one of fact, *United States v. Robinson,* 327 F.2d 959 (7th Cir. 1964), and whether there is any evidence to support a finding of sanity must be determined under the applicable state law. *Brooks v. Rose,* 520 F.2d 775 (5th Cir. 1976). Under Indiana law the issue of sanity may be established by either expert or

---

1. The Indiana standards on the issue of insanity are set out in *Hill v. State,* 252 Ind. 601, 251 N.E.2d 429, 437 (1969): "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

2. According to § 35–5–2–2, whenever a defendant pleads insanity, the court "shall appoint two, or three, competent disinterested physicians to examine the defendant and to testify at trial." However, § 35–5–2–3, specifies that in all cases the finding of insanity is to be made by the trier of fact.

lay testimony, and it is permissible for the jury to credit the testimony of lay witnesses over that of an expert witness. As the Indiana court noted in *Fitch v. State*, 313 N.E.2d 548, 549 (Ind.App.1974): "Expert testimony is not conclusive. . . . such a view would constitute a usurpation of the role of the . . . trier of fact. The function of the expert witness is advisory in nature. He does not state *fact*. Rather, he renders an *opinion* to aid the trier of fact . . . ." (emphasis in the original).

■ The Indiana Supreme Court provided a full and fair hearing on this issue and found that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was sane.[3] A due process issue is raised only where a state court conviction is totally devoid of evidentiary support. *Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). The factual finding of sanity clearly has evidentiary support, and therefore we affirm the finding of the district court below that petitioner was not deprived of the benefit of due process of law.[4]

## II.

Petitioner also argues that the district court was incorrect in finding that he failed to exhaust his available state remedies as to the memory erasure and speedy trial issues.

■ First, he argues that the issues were in fact presented to the Indiana Supreme Court, and that since that Court chose not to address the issues, by implication it rejected them.[5] Petitioner had appointed counsel who represented him on his appeal to the Indiana Supreme Court, and it is not disputed that these issues were not raised by his counsel. Nonetheless petitioner argues that both the facts and the theories were presented to the Court through his letter written to Chief Justice Arterburn on December 19, 1972. The Court in its decision mentioned the letter and stated, "finding no merit in any of appellant's contentions, the *pro se* motion is denied . . ." The Court's description and discussion of the issues raised by the letter[6] do not indicate that it was avoiding the claims that petitioner now presents in his petition for a writ of habeas corpus, but that it simply did not read the letter as raising these issues. Our review of the letter, having the benefit of being advised by the petitioner that the letter does indeed include these issues, reveals that the references are at best oblique,[7] and we cannot agree that the facts

**3.** *Moore v. State*, 260 Ind. 154, 293 N.E.2d 28 (1973).

**4.** We are unpersuaded by petitioner's argument that the state was estopped from treating him as sane since it had confined him to a hospital for the criminally insane for three and a half years. None of the cases cited in support of this position involve due process habeas corpus review of a state court proceeding. Furthermore, even in a federal proceeding such evidence does not create an irrebuttable presumption but is only one of the factors to be considered in determining sanity. *United States v. Kissane*, 478 F.2d 1098 (7th Cir. 1973).

**5.** We note, although not mentioned by either party, that it is unclear under Rule 1–14B of the Indiana Supreme Court whether petitioner would have been entitled to raise the issues of memory erasure and speedy trial to the Court since he failed to present them first to the trial court by way of a motion for a new trial (or a motion to correct errors). When this occurred in *McKinley v. State*, 253 Ind. 187, 252 N.E.2d 420 (1969), the Indiana Supreme Court held that P.C.R. 1 was especially created to provide

relief in such a situation, and that if relief was denied, the petitioner was entitled to appeal under Section 7 of the post-conviction procedures.

**6.** The issues presented by this letter according to the Indiana Supreme Court were: a *Miranda* issue, and a request to amend the brief filed by his attorney or in the alternative to withdraw his appeal because he was dissatisfied with counsel appointed for the appeal, claiming he was only giving "perfunctory representation." The Court also noted that he objected to the fact that he had not received a copy of the trial transcript, mentioning the possibility of error, but not alleging any specific error.

**7.** In the long, rambling letter, petitioner claims the memory erasure issue was presented to the court by this sentence: "[W]hether the state has the right to deny an accused person of the right to defend a criminal charge, by the use of drugs and/or other devices which change and/or alter the structure or functioning of the brain, . . . ." While the phrase, "speedy trial right" is used, it occurs during his discussion of the adequacy of counsel on appeal.

and theories of these claims were "fairly presented" to the Indiana Supreme Court or that the Court reached and passed on the merits of these claims.

We now move to the question of whether there are state remedies actually available to petitioner, for exhaustion is only required "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The government urges this court to find, as did the district court, that under the Indiana Rules of Procedure for Post-Conviction Remedies, specifically Rule P.C.R. 1,[8] petitioner has the right to seek post-conviction relief for both the memory erasure and speedy trial issues. Petitioner argues that this procedure is not in any realistic sense able to afford him relief, since he will be held to have waived these issues[9] under Section 8, which provides:

All grounds for relief available to a petitioner under this rule must be raised in his original petition. Any ground finally adjudicated on the merits or not so raised and *knowingly, voluntarily and intelligently waived* in the proceeding that resulted in the conviction or sentence, or in any other proceeding the petitioner has taken to secure relief, may not be the basis for a subsequent petition, *unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original petition* (emphasis added).

The words of the statute indicate that this section will operate only where an issue has been "knowingly, voluntarily and intelligently waived." Further, the very last phrase indicates that the court has discretion to hear a petition on the merits if it finds "sufficient reason" why the issue was not asserted or was "inadequate raised."

An examination of Indiana law reveals that there are numerous situations where the waiver provision has not precluded review of the merits. First, the state has decided on some occasions not to raise the defense of waiver, even though available to them. In such a situation, the merits of the claim have been heard and resolved by the state courts, both at the trial level and on appeal.[10] *Harrison v. State*, 337 N.E.2d 533 (Ind.App.1975); *State v. Kolb*, 318 N.E.2d 382 (Ind.App.1974); *Johnson v. State*, 262 Ind. 183, 313 N.E.2d 542 (1974); *Langley v. State*, 256 Ind. 199, 267 N.E.2d 538 (1974).

In other situations, the defense of waiver has been asserted by the state, and yet the trial court has gone on to decide the merits of the claims while not resolving the issue of waiver. *Johnson v. State, supra; Carroll v. State*, 355 N.E.2d 408 (Ind.1976).

Finally, it is also possible for petitioner to present "some substantial basis or circumstance . . . which would satisfactorily mitigate a petitioner's failure to have pursued or perfected a remedy," and thus overcome the waiver assertion. *Langley v. State, supra,* at 542. *See also Harrison v. State, supra.*

---

**8.** Section 1 of the Rule provides in relevant part:

Section 1. Remedy—To whom available—Conditions.

(a) Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims (1) that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state; . . . may institute at any time a proceeding under this Rule to secure relief.

**9.** Petitioner cites *United States ex rel. Williams v. Brantley,* 502 F.2d 1383 (7th Cir. 1974), as "clearly in point." There this court held that exhaustion was not necessary since direct precedent in Illinois indicated that no remedy was available. As will be discussed below, we

do not find Indiana precedent to indicate that no remedy is available under the facts of this case. Further, in *Brantley* this court noted that previous petitions for habeas corpus relief filed by that petitioner had been denied for failure to exhaust state remedies since he had failed to first seek relief under the Illinois Post-Conviction Hearing Act. It was only after his petition under those procedures was dismissed and this court determined an appeal of that dismissal was futile under Illinois law, that it reached the merits of the petition.

**10.** During oral argument the Deputy Attorney General, while specifying that he did not represent the State Attorney's office and thus could not speak for them, indicated he felt this might be such a case.

It is only this last situation which petitioner acknowledges in his brief on appeal. Further, he contends that the only way he can attack the waiver defense is to argue that he was represented by incompetent counsel, and that while this is theoretically possible, it is realistically impossible.

· We express no view as to whether this is in fact the only basis which is available to petitioner under the facts of this case to counter the waiver defense, *if* the state chooses to raise the defense, and *if* the court requests defendant to meet this argument before addressing the merits. However, petitioner is in error if he interprets the statute to mean that this is the only argument that can be made to counter a waiver assertion by the state.[11] We note from the record that petitioner did object to the issues that the appointed counsel was raising on appeal, and, as the district court noted, "made it clear by his letter that he did not wish to waive his other grounds on appeal." Thus there exists the factual circumstances for petitioner to argue, and from which the Indiana courts could conclude either that there was not a "knowing and voluntary waiver" or that this is the "substantial basis" justifying petitioner's failure to have pursued a remedy. The inability of this court to predict the final outcome of the proceeding in the state courts does not vitiate the exhaustion requirement. *United States ex rel. Milner v. Pate*, 425 F.2d 249 (7th Cir. 1970).

Finally, we disagree with petitioner's argument that it would be futile for him to attempt to prove he had ineffective counsel under Indiana law. A review of Indiana case law reveals that the courts of that state do not summarily reject incompetency of counsel claims, rather that such questions are considered on the merits on a case-by-case basis. In *Davis v. State*, 328 N.E.2d

768 (Ind.App.1975), the case was sent back to the trial court specifically to hear evidence on whether a claim that counsel was incompetent, because he had failed to preserve for appeal issues defendant felt were substantial, was sufficient to overcome a waiver defense in the post-conviction procedure.

In *Greer v. State*, 262 Ind. 622, 321 N.E.2d 842 (Ind.1975), the Indiana Supreme Court found that where there had been a change in counsel between the trial and the appeal and that this change may have been the cause of the failure to preserve certain issues for appeal, that post-conviction procedures were available, for petitioner could not "in fairness be held responsible for the waiver of the issue" under such circumstances. *Id.* at 844. The record here reveals that not only were there numerous changes in counsel at the trial stage,[12] but also that new counsel was appointed on appeal.

In conclusion, we do not find the waiver section to be as well-defined and limited as petitioner Moore asserts and conclude that there has not been an adequate showing that resort to the state courts of Indiana would be an "idle and useless effort." The Indiana Supreme Court, noting what it considered the "increasingly liberal interpretation" the federal courts are giving to their jurisdiction in habeas corpus cases, and the strains this causes state and federal relationships by placing "the very integrity of a state's criminal proceeding in question," felt that its post-conviction procedures had an important role to play.

Clearly then, it may be said that one of the functions of our post-conviction remedy rules is to preserve what sanctity remains to this state's disposition of a criminal charge by allowing a convicted criminal defendant ample opportunity to

---

11. "[W]e do not purport to articulate a list of the bases for such a collateral attack, it is clear that one such persuasive circumstance, if adequately proved, would be the ineffective assistance of counsel." *Langley v. State, supra,* at 545.

12. The record reveals that at least five different attorneys, both retained and court-appointed, represented petitioner Moore at various times in the pre-trial and trial stages, and that new counsel was appointed on appeal. Mr. Moore in his objections to the Indiana Supreme Court by his *pro se* letter stated that counsel on appeal never met with him to discuss his case.

present claims for relief in the courts of this state before resort must be had in the federal courts.

*Langley v. State*, 267 N.E.2d at 541. We feel that the principles of comity require exhaustion of the state remedies. *United States ex rel. Wax v. Twomey*, 465 F.2d 352 (7th Cir. 1972).

For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED.