Charles Edward WILLIAMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 676S174.

Supreme Court of Indiana.

Sept. 5, 1979.

Cletus H. Brault, Jr., Merrillville, for appellant.

Theodore L. Sendak, Atty. Gen., Daniel L. Pflum, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Williams was charged in three counts with murder, inflicting an injury in

the commission of a robbery, and robbery. He entered pleas of not guilty and insanity; a trial to a jury resulted in his conviction on all counts; and he received two life sentences and a term of ten to twenty-five years. He now appeals such convictions raising several issues for our determination, including (1) whether error occurred in the admission of a photograph of the crime scene and a photograph of the body of the victim; (2) whether the trial court erred in refusing to grant him a continuance for the purpose of subpoenaing character witnesses; (3) whether the trial court erred in refusing a defense instruction on the insanity defense and in giving a prosecution instruction on intoxication; and (4) whether there was sufficient evidence of sanity to support the guilty verdict.

Appellant robbed the Cozy Corner Bar in Gary, Indiana. At gunpoint while in the bar he took money, shot and wounded the bartender in the neck, and during the course of a struggle with appellant a customer by the name of Hodges was shot and killed. Appellant had previously been hospitalized for psychiatric treatment, was determined to be incompetent to stand trial during the pre-trial period on the present charges, and had a history of use of soft drugs and alcohol.

### I.

During the course of the testimony presented by the State, a frequent customer of the Cozy Corner who was present at the time of the alleged offenses identified State's Exhibit 4 as a photograph depicting a portion of the interior of the Cozy Corner. Defense counsel objected to the proffer of the exhibit for introduction on the basis that no proper foundation had been established for its introduction. The objection was overruled. One of the necessary steps in qualifying a photograph for introduction is to establish that it is a true and accurate representation of the person, place or thing which it purports to portray. *New v. State*, (1970) 254 Ind. 307, 259 N.E.2d 696; *Johnson v. State*, (1972) 258 Ind. 648, 283 N.E.2d 532. Appellant con-

tends that such element was not shown. The witness identified Exhibit 4 as a photograph of the interior of the Cozy Corner looking from the front entrance to the back. Immediately before doing so he had identified State's Exhibit 3 as being a photograph taken inside the Cozy Corner, and as being an accurate portrayal of the bar as it appeared on May 3, 1973. The two exhibits show the interior of the bar, the crime scene, from different angles. The two photographs were being introduced sequentially and were both of the interior of the tavern. The establishment of the accurate representation element for Exhibits 3 and 4 was a single continuous process and was sufficient.

As stated appellant was charged with the murder of one Oscar Hodges. The same witness referred to immediately above testified that he was seated at the bar in the Cozy Corner on the night of the robbery and that appellant was sitting several seats down the bar from him. He recalled seeing a Mr. Hodges enter the tavern at that point, accompanied by a woman, and at such time the tavern door was locked as closing time had been reached. At this point in the trial, the witness identified State's Exhibit 5 as being a photograph of the customer Hodges. The photograph displays a human being laid out on a stretcher, dead or in dire circumstances. Appellant contends that the photograph had no relevance or purpose other than to confuse and prejudice the jury. At the time the photograph was offered by the prosecution for introduction, there had been no testimony presented describing the death or wounding of the victim Hodges. The testimony to that point was concerned only with the presence of Hodges in the tavern. We have held that a photograph which is a graphic portrayal of relevant testimony is itself relevant. *New v. State, supra.* A photograph is an image of that which is photographed and is the equivalent of a verbal description. It supplies information and the information supplied by this photograph was partly relevant wherein it portrayed the person of Hodges; but was inadmissible

and highly prejudicial insofar as it constituted an assertion that Mr. Hodges was wounded or dead. In *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482, this Court stated with regard to the admission of photographs:

"Considerable latitude is permitted to the trial judge in determining the admissibility of such evidence when a fair conflict appears between the State's right to present relevant evidence and the defendant's right to be protected from prejudice likely to be engendered from morbid and shocking displays. The question is, of necessity, one of balance . . . ." 263 Ind. at 61, 324 N.E.2d at 486.

The prejudicial and inflammatory impact upon the jury from this photograph clearly and decisively outweighed its relevance as a picture of a man who according to the testimony up to that time had entered a bar to have a drink. The ruling of the court was erroneous when made.

After Exhibit 5 was introduced into evidence and displayed to the jury, testimony of the sponsoring witness revealed that prior to the robbery and shootings, he left the Cozy Corner and went across the street to have a drink in another tavern. Within a few minutes Mr. Hodges also entered the tavern. He was badly wounded and bleeding profusely. His shirt front was covered with blood and he spoke with difficulty. Testimony of other witnesses showed that Mr. Hodges was shot while wrestling with appellant and that thereafter he had lurched out of the Cozy Corner Tavern and later died as the result of the wounds received. In light of this testimony of the wounding and death of Mr. Hodges, the error in admitting the photograph of Mr. Hodges' body did not result in harm or prejudice to appellant's substantial rights and does not constitute reversible error. *Whitten v. State*, (1975) 263 Ind. 407, 333 N.E.2d 86; *Hightower v. State*, (1973) 260 Ind. 481, 296 N.E.2d 654.

## II.

◼ At the close of the State's case appellant handed his counsel a list of twenty character witnesses he desired to have testify for him. Counsel immediately made an oral motion for a continuance for the purpose of obtaining the addresses of these persons and procuring their attendance. Counsel stated that he did have one of the witnesses, but that he had no idea where the other witnesses lived. The trial court denied the motion and no character witnesses in fact testified on behalf of appellant.

Appellant argues that the denial of the motion prevented him from presenting character witnesses. The assertion cannot as a legal matter be supported. The trial court exercises considerable authority in making a determination of whether a continuance of an ongoing trial should be granted. *Johnson v. State*, (1970) 254 Ind. 465, 260 N.E.2d 782; *Hooks v. State*, (1977) 266 Ind. 678, 366 N.E.2d 645. As made to the trial court, there was no justification offered in the motion to show why it had not been made more promptly, and there is no suggestion made that there had been inadequate time during the pre-trial period for the witnesses to be located and subpoenaed. The motion provided no assurance that efforts to locate the addresses of the proposed witnesses would be fruitful. The motion was certainly not precipitated by any surprise to the defense arising at trial. The future need for character witnesses can be assessed with a high degree of accuracy prior to most trials. Even in a murder case a continuance in the midst of a trial cannot be lightly granted as it results in considerable disruption of the trial court's schedule; juror, witness and counsel inconvenience; and substantially increases the risk that the jury cannot again be assembled and the trial brought to a conclusion. There was, therefore, a reasonable basis for the denial of the motion and we find that such ruling was not error.

## III.

◼ Appellant argues that the trial court erred in refusing to give Defendant's Tendered Instruction Number 1 which reads as follows:

"In a criminal prosecution where there is some evidence in support of a plea of insanity, the State must prove the accused could know the wrongful nature and consequences of his act and that the accused had sufficient will power to control his impulse to commit the act and failure to prove either requirement beyond a reasonable doubt is a failure of proof on this issue."

On appeal in considering whether any error occurs when a tendered instruction is refused we first determine whether the instruction correctly states the law. *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836. This instruction relates to the insanity test as established in *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429. The instruction is erroneous as it did not correctly state that test. The instruction does not inform the jury that the State may satisfy its burden to prove sanity by showing to the satisfaction of the jury beyond a reasonable doubt that the accused was not suffering from a mental disease or defect at the time of the alleged criminal act. Moreover, the instruction is confusing in that it substitutes the concept of will power for that of capacity. The instruction was properly refused.

Appellant argues that the trial court erred in giving Final Instruction 9 relating to the intoxication defense. The only objection in the record before us to this instruction is contained in the motion to correct errors. There is no record of an objection to the instruction prior to the time it was read to the jury. The issue sought to be raised here was not presented in a timely fashion to the trial court and is, therefore, not preserved for appeal. Ind.R.Crim.P. 8(B); *Thomas v. State*, (1976) 264 Ind. 581, 348 N.E.2d 4.

### IV.

Appellant next contends that there was insufficient evidence to sustain the jury's determination that appellant was sane at the time of the robbery and murder. The burden fell upon the prosecution at this trial to prove appellant sane to the satisfaction of the jury beyond a reasonable doubt.

The legal test is supplied by the *Hill* case, *supra*. The burden of the State can be met by sufficient evidence that the accused was not suffering from a mental disease or defect at the time of his conduct comprising the offense or that if so suffering he was nevertheless possessed of a substantial capacity to appreciate the wrongfulness of such conduct and to conform his conduct to the requirements of the law. *Hill v. State, supra*. The sufficiency of evidence of the element of sanity is treated in the same manner as the elements of the substantive offense. *Dragon v. State*, (1974) 262 Ind. 394, 316 N.E.2d 827.

The evidence showed that appellant entered the Cozy Corner alone around 10:30 p. m. During the next few hours he left the tavern three or four times, staying away approximately fifteen minutes each time. One customer on the occasion testified that he entered the Cozy Corner around 11:30 and sat down at the bar a few seats from appellant. Appellant was observed getting up from his stool, going to the men's room, then returning to the bar and playing the juke box. After a few minutes appellant was observed repeating this routine. The witness did not observe appellant touch his drink, and while appellant's repeated routine made him uneasy, he noticed nothing else unusual about appellant.

Mr. Hodges entered the Cozy Corner about closing time accompanied by his wife. Appellant asked the bartender for some more change for the juke box and was told that the bar was closing. Appellant then got up to leave and in order to let him out the locked door, the bartender followed him. When they reached the door appellant turned around, pulled a hidden gun, stuck it in the face of the bartender and told him, "This is a hold-up, give me all the money you got quick." The bartender replied, "a hold-up", and appellant fired his gun striking the bartender in the neck. He then handed appellant all the money that he had whereupon appellant said that there was more money in the back and that he should get it. The bartender, accompanied by ap-

pellant, went to the back of the tavern where the bartender gave appellant the rest of the money at which time appellant again shot the bartender. At this point appellant told everyone to get into the restroom and that he was going to kill everyone. While everyone was proceeding to the restroom, appellant ordered a female customer to remove her clothes which she did. After the customers had gone into the restroom, the deceased, Oscar Hodges, reached up and grabbed the gun at which time the bartender pulled his gun and fired several shorts at appellant. Mr. Hodges was wounded. Appellant then disappeared out of the restroom.

Two psychiatrist witnesses testified that appellant had been previously treated in a mental hospital; that in their opinions appellant was not legally sane at the time of the offense; and described appellant's mental condition as epilepsy, alcoholism, soft drug abuse, brain damage, and toxic psychosis. However, the jury also heard one of these witnesses describe appellant as having an I.Q. of 113, within the bright-normal range, not psychotic nor schizophrenic, as not having experienced an epileptic seizure or convulsion at the time of the offense, and as having held a job at a steel plant for four years prior to the offense. One of these witnesses provided testimony from which the jury could have inferred that whether or not appellant's mental condition would affect his "capacity" was dependent upon circumstances. Part of such circumstances would certainly include those which existed on the night of the offense. The jury under instruction by the court and by reason of having heard and evaluated the testimony of the witnesses by whom the State sought to recreate the events of the crime had data regarding these events of the crime which was more complete and accurate than that known to the expert witnesses. Indeed, it is mandatory that the trier of fact not limit itself to reaching a conclusion on the insanity defense based solely upon the expert testimony. As stated in *McDougal v. State*, (1882) 88 Ind. 24:

"It is the duty of the jury to consider not only the evidence directed specially to the conviction of the mental condition of the accused, but also all circumstances developed by the evidence bearing upon that question." 88 Ind. at 27.

We find that the evidence was sufficient to warrant a reasonable trier of fact in concluding beyond a reasonable doubt that appellant on the occasion involved was not suffering from a mental disease or defect within the meaning of those terms as they appear in the *Hill* test. There is likewise sufficient evidence to warrant a finding to that same degree of certainty that if appellant was suffering from a mental disease or defect at the time he robbed the tavern, he nevertheless retained a substantial capacity during the criminal episode described in the prosecution's case to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law. With regard to the latter alternative part of the State's burden, the jury could reasonably have inferred that appellant conceived a plan to rob the tavern and pursuant to such plan armed himself with a hidden weapon and went there. He waited several hours until the people thinned out before pulling his weapon and revealing his purpose. During such period he acquainted himself with the interior of the tavern. He had prior knowledge of the presence of money in a particular rear area of the place. During the waiting and as the time wore on appellant was able to restrain himself according to the plan until the time was right. His conduct in placing the customers in the restroom indicated an awareness of the need to keep open an avenue for eventual escape. The jury could have further concluded that appellant was motivated by a hope of gain and gratification of his passion, and that he took ever increasing pleasure in the exercise of dominion over the persons present. There was a substantial evidentiary basis upon which the jury was warranted in concluding beyond a reasonable doubt that appellant was sane at the time of the offense even though such conclusion is contrary to the opinion of the expert witnesses.

The conviction is affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

PRENTICE, J., dissents with opinion in which HUNTER, J., concurs.

PRENTICE, Justice, dissenting.

I dissent to issue number IV, which is a challenge to the sufficiency of the evidence of Defendant's sanity at the time the criminal acts were committed, for the same reasons and upon the same authorities set forth in my dissenting opinion in *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 453–456. The cases are very similar.

As stated in my *Lynn* dissent, the criminal acts of the defendant were bizarre, but this does not preclude his having been sane under the *Hill* test. But neither does the commission of criminal acts, standing alone, evidence sanity.

The State amply proved that the defendant committed the criminal acts charged and rested. The defendant did not refute the evidence of such acts but rested, without taking the stand, after showing his prior commitments to Beatty Hospital for the insane and that he was an epileptic and receiving medication as such, under the direction of a Beatty staff doctor.

Thereafter, the two court appointed psychiatrists testified at length. Their testimony revealed that the defendant had a long history of emotional instability. As a boy, he had been hospitalized in Illinois in a state institution for epilepsy and similar organic illnesses, because he was confused and had a memory failure. He had also had significant head injuries on two separate occasions.

In December of 1965, at age 16, Defendant was committed to Norman Beatty Hospital, being under indictment for burglary, rape and inflicting injuries in the commission of a robbery and having been found to be of insufficient comprehension to stand trial. He was released to the court from Beatty Hospital in October of 1968, entered a guilty plea to reduced charges and received a two year probated sentence. During the aforementioned incarceration at Beatty Hospital, in 1965, the defendant was tested by electroencephalogram which revealed minimal abnormality, and in 1966 he received thirty electro shock treatments, each of which would have produced some brain damage.

Following his release in 1968, up until the time that he was arrested upon the pending charges, the defendant had also ingested excessive amounts of soft drugs and alcohol.

Following the filing of the charges of which he stands convicted, the defendant was again found to be incompetent to stand trial and committed to Beatty Hospital. He was released to stand trial on January 28, 1975.

The court appointed psychiatrists testified that in their opinions the defendant was, at the time of the crimes, suffering from a mental defect, in consequences of which he was unable to conform his conduct to the requirements of the law. Their opinions were based upon the foregoing related information and their examinations and observations of the defendant.

The evidence relied upon by the State and related in the majority opinion reflects nothing more nor less than conduct which might reasonably be attributed to either a sane or insane person. The majority rests its decision upon indicators that, in my opinion are not substantial. If the burden were upon the defendant to prove his insanity, I would hold that the evidence did not require a reversal. But the burden is upon the State. There is no inconsistency in rational or normal acts or attributes emanating from one who is insane—either in the ordinary sense or under the *Hill* test. The *Hill* criteria stops far short of idiocy or lunacy. It is my opinion that it cannot be said, with reasonableness, that the evidence was sufficient to sustain the State's burden of proving that the defendant was sane beyond a reasonable doubt. Accordingly, I would remand the cause with instructions to enter a verdict of not guilty, by reason of insanity, and to proceed in accordance with the provisions of Ind.Code § 35–5–2–5, as was urged by my dissent in *Lynn v. State*, *supra*.