**James R. GREIDER,
Petitioner-Appellant,**

v.

**Jack DUCKWORTH,
Respondent-Appellee.**

No. 82–1487.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 25, 1983.

Decided March 9, 1983.

As Amended March 11, 1983.

Karen Plant, Chicago, Ill., for petitioner-appellant.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before BAUER, CUDAHY and POSNER, Circuit Judges.

BAUER, Circuit Judge.

Greider appeals the denial of his petition for writ of habeas corpus, 28 U.S.C. § 2254, challenging the sufficiency of the evidence that he was sane at the time the crime was committed. The district court found that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Greider was sane at the time of committing the crime. We affirm.

## I.

Greider testified that on January 31, 1977, while under the influence of drugs, he took a taxi to the apartment of Richard Dingman. Greider carried wrapped in a jacket a sawed-off shotgun which he intended to give Dingman to trade for drugs. Greider was also armed with an automatic pistol, housed in his belt, which he described as a Garcia, 380 caliber semi-automatic. Greider recalled that Dingman picked up the shotgun, aimed the gun and released the safety. In the statement given police, Greider recalled that "[he] pulled [his] gun out, that was in [his] belt and shot him. As [Dingman] started to slump down, [Greider] shot him again." At trial, Greider described the scene as he "recalled hearing two loud explosions." When Paula Luciente, the second victim, walked toward Greider, she was shot in the face. In Greider's statement to the police, he said "when she came at me, I just pointed the gun at her and shot her. It was in the front part of the face." When Greider testified at trial,

he said that "when Luciente walked toward [him, he] heard another explosion." Greider stated that Luciente was standing about four feet away from him. However, powder marks were detected around the entry wound on Luciente's head. Greider recalled checking Dingman for vital signs. He did not check Luciente because she lay in a large pool of blood.

After the shooting, Greider walked to the apartment of some friends. The friends were not at home. Greider returned to Dingman's apartment, retrieved the shotgun and automatic pistol, and walked to his home. There, he unloaded the guns and placed them under a mattress.

Later that evening, he talked to his fiancee, Sandra Dockstader, told her what he had done, and said that he had no right to live. Greider slashed his arm. He went next door and asked a neighbor, Theodore Jurick, to drive him to the hospital. Jurick drove Greider to the emergency room of St. Catherine's Hospital and remained during Greider's treatment.

The following day, February 1, 1977, Greider drove to South Bend to purchase drugs, but could not make a buy. On February 2, 1977, Greider's fiancee, Sandra Dockstader, drove him to Indianapolis to enroll in Cognition House, a drug rehabilitation center. It was from this center that Greider phoned the Hammond police to report the murders. Greider never denied committing the murders. He interposed as a defense that from Friday, January 28, through Monday, January 31, he ingested an excessive amount of heroin and valium and as a result he was insane at the time the crimes were committed. The court appointed three psychiatrists to examine Greider.

Each physician testified that after examining Greider they were of the opinion that Greider was suffering from a toxic psychosis due to the drugs ingested, and that Greider was unable to appreciate the wrongfulness of his conduct. A clinical psychologist testified that Greider was an "explosive personality" as exemplified by his three or more suicide attempts. The state offered no expert testimony.

A jury found Greider guilty of two counts of murder. He was sentenced to life imprisonment. On appeal, he challenged his conviction charging that the state failed to present evidence sufficient to rebut his defense that he was insane at the time the crime was committed. The Indiana Supreme Court affirmed the conviction finding that all the facts and circumstances surrounding the shootings were sufficient evidence to sustain the jury's conclusion that Greider was sane at the time he fired the gun. *Greider v. State,* 385 N.E.2d 424 (Ind.1979).

Greider filed the instant petition for writ of habeas corpus, 28 U.S.C. § 2254, challenging the sufficiency of the evidence that he was sane at the time the crime was committed. The district court reviewed the trial transcript and determined that the state of Indiana's summation of the evidence was an accurate statement of the relevant facts. The district court concluded that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Greider was sane at the time of committing the crime. The writ was denied. Greider appealed.

II.

A.

■ Greider argues that the evidence at trial was constitutionally insufficient to support his conviction given the unrebutted testimony of three court-appointed psychiatrists as well as that of lay witnesses that Greider was legally insane at the time the offense was committed. Our standard of review in a federal habeas corpus proceeding where the claim is that the petitioner has been convicted upon insufficient evidence was articulated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in which the Court described the inquiry as "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This

... standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S.Ct. at 2789.[1]

### B.

■ The general rule at common law and in Indiana was that voluntary intoxication was not a defense in a criminal proceeding. In order for intoxication to relieve a defendant from responsibility, the crime charged must have involved specific intent, and the defendant must have been so intoxicated as to be incapable of entertaining the required specific intent. *Bates v. State,* 409 N.E.2d 623, 625 (Ind.1980), citing *Larkin v. State,* 393 N.E.2d 180 (Ind.1979); *Snipes v. State,* 261 Ind. 581, 307 N.E.2d 470 (1974). *See also James v. State,* 265 Ind. 384, 354 N.E.2d 236 (1976).

■ The court in *Carter v. State,* 408 N.E.2d 790, 799 (Ind.App.1980), noted that the defense of voluntary intoxication has been applied to the classic specific intent cases, (1) offenses wherein the crime depended on the intent, purpose, aim, or goal with which an act was done, and (2) those offenses wherein the knowledge of an attendant circumstance is a material element of the crime. In such applications the defense of voluntary intoxication may be a factor for reducing an offense from first degree murder to second degree murder. *See Aszman v. State,* 123 Ind. 347, 24 N.E. 123 (1890).[2]

■ Specific intent is an element of first degree murder, and, as an element of the offense must be independently proven. *See Hooker v. State,* 387 N.E.2d 1354 (Ind. App.1979) quoting from 22 *C.J.S. Criminal Law* § 32 (1961). Although Indiana decisions have not defined specific intent, *Carter v. State,* 408 N.E.2d at 794, the courts have held that the existence of the requisite intent is a question of fact for the jury. *Greider,* 385 N.E.2d at 426; citing *Preston v. State,* 259 Ind. 353, 287 N.E.2d 347 (1972). *See also Horton v. State,* 265 Ind. 393, 354 N.E.2d 242 (1976); *Norris v. State,* 419 N.E.2d 129 (Ind.1981): "The trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to infer the existence of knowing or intentional conduct." *Id.* at 132. Consequently, the jury is permitted to infer malice from the intentional use of a deadly weapon in a manner likely to cause death. *Oates v. State,* 429 N.E.2d 949, 951 (Ind. 1982); *Bond v. State,* 403 N.E.2d 812, 820 (Ind.1980); *Zickefoose v. State,* 270 Ind. 618, 388 N.E.2d 507, 509 (Ind.1979).[3] And, the jury may infer purpose to kill in the act of killing. *Bond v. State,* 403 N.E.2d at 820, citing *Kerns v. State,* 265 Ind. 39, 349 N.E.2d 701 (1976) and cases cited therein.[4]

---

1. Indiana has declined to adopt "the rational trier of fact" standard of review when reviewing sufficiency claims. *Norris v. State,* 419 N.E.2d 129, 134 (Ind.1981). Instead, the standard of review is a reviewing court will neither reweigh the evidence nor judge the credibility of witnesses. *Jackson v. State,* 402 N.E.2d 947, 948 (Ind.1980). The reviewing court "will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom, to determine whether a reasonable juror could have found the existence of each of the elements of the crime charged beyond a reasonable doubt." *Id.* at 948.

2. The *Greider* jury was instructed on the lesser included offense of voluntary manslaughter.

3. Under the current statutory scheme, effective October 1977, malice is not an element of the crime of murder. *Palmer v. State,* 425 N.E.2d 640 (Ind.1981). The penal statute now reads:

Sec. 1. A person who: (1) knowingly or intentionally kills another human being, or ... commits murder, a felony."
Ind.Code 35–42–1–1. Proof of "knowingly or intentionally killing" is sufficient to convict for murder. *See* Commentary, Ind.Code 35–42–1–1.
However, the *Greider* jury was instructed "Whoever purposely and with premeditated malice kills any human being is guilty of murder in the first degree, ...."

4. The *Carter* Court, 408 N.E.2d 790, 794–5 n. 6, described the objective-subjective dichotomy of *mens rea* required for first degree murder in the following illustration: "One is punished for first degree murder, a specific intent offense, only when the actor's shooting a gun (i.e., the voluntary act) was done with the subjective desire to kill a human being (i.e., the prohibited result) (perhaps implied in the statutory word 'premeditation')."

The *Greider* court, however, did not rely on these inferences but instead applied the common law view whereby when one voluntarily becomes intoxicated, guilt is attached to the intoxication itself, and is then transferred to the criminal act, supplying the required culpability. *Greider,* 385 N.E.2d at 426. *See also Snipes·v. State,* 261 Ind. 581, 307 N.E.2d 470 (1974); *Emler v. State,* 259 Ind. 241, 286 N.E.2d 408 (1972).[5]

### C.

The second prong of the voluntary intoxication defense is that the defendant must have been so intoxicated as to be incapable of entertaining the required specific intent.[6] In application, this defense raises questions of mental disease and goes to the degree of abuse of alcohol or drugs. *See Anderson v. State,* 177 Ind.App. 603, 380 N.E.2d 606 (Ind.App.1978). While temporary mental incapacity induced by voluntary intoxication is generally not a defense, the law will not hold an accused responsible for his acts where the ingestion of intoxicants has been abused to the point that it has produced mental disease such that the accused is unable to appreciate the wrongfulness of his conduct or is unable to conform his conduct to the requirements of the law. *Jackson v. State,* 402 N.E.2d 947, 949 (Ind.1980).

Initially, in Indiana the defendant has the burden of proving his intoxication defense. *Bates v. State,* 409 N.E.2d 623, 625 (Ind.1980); *Myers v. State,* 422 N.E.2d 745, 751 (Ind.App.1982). After defendant has raised the issue of sanity, the state has the burden of proving sanity beyond a reasonable doubt. *Coonan v. State,* 269 Ind. 578, 382 N.E.2d 157 (1978), *cert. denied,* 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246.[7] The state's burden can be met by sufficient evidence that the accused was not suffering from a mental disease or defect at the time of the offense, or that if so suffering, he was nevertheless possessed of a substantial capacity to appreciate the wrongfulness of such conduct and to conform his conduct to the requirements of the law. *Williams v. State,* 393 N.E.2d 183, 187 (Ind.1979). However, it is for the jury to determine whether the accused's conduct was the result of a diseased mind—regardless of the source of the disease—or was the result of voluntary intoxication. *Jackson v. State,* 402 N.E.2d 947, 949 (Ind.1980).[8]

5. Moreover, Indiana courts have used the doctrine of transferred intent to establish intent to kill when the defendant has used a weapon in a manner which would cause death. *See Norris v. State,* 419 N.E.2d 129, 133 (Ind.1981); *Jackson v. State,* 402 N.E.2d·947 (Ind.1980); *Taylor v. State,* 260 Ind. 264, 295 N.E.2d 600, 610 (1973), *cert. denied,* 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250.

6. This language was used in the *Greider* opinion. Commentators have criticized this formulation of the rule suggesting that as framed the rule renders the defense illusory, because if literally applied by the trier of fact, one would have to be unconscious before he could avail himself of the defense. *Carter v. State,* 408 N.E.2d 790, 802 (Ind.App.1980).

7. States have varied in their treatment of the insanity defense. More than half place the burden of disproving insanity on the prosecution while a minority place the burden of proving insanity on the defendant. *Price v. State,* 412 N.E.2d 783, 785 (Ind.1980). Jurisdictions placing the burden on the defendant view insanity as an affirmative defense with no relationship between sanity and *mens rea* while jurisdictions placing the burden on the state

view sanity as an element of the offense or as necessary to the formation of the requisite culpable mental state. *Price* at 785 citing *United States v. Greene,* 489 F.2d 1145 (D.C.Cir.1973); *see also Note, Constitutional Limitations on Allocating the Burden of Proof of Insanity to the Defendant in Murder Cases,* 56 *Boston U.L. Rev.* 499 (1976). Although there are Indiana decisions treating sanity as an element of the offense, most decisions have treated insanity as an affirmative defense.

8. Although the Constitution is not offended by a state placing the burden of proving an affirmative defense such as insanity on the defendant, *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), once the state legislature has allocated the burden of proof, and required the state to prove a fact beyond a reasonable doubt, [see *Stacy v. Love,* 679 F.2d 1209 (6th Cir.1982) ], a federal court may review the historical facts to determine whether the state has met its burden. As the court noted in *Walker v. Butterworth,* 599 F.2d 1074, 1079 (1st Cir. 1979), ... "the government's burden of proof and any presumptions that may affect that burden are only constitutionally relevant if they relate to an indispensable 'ingredient' of the

■ Three psychiatrists testified that Greider suffered from toxic psychosis and were of the opinion that Greider was unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law.[9] A fourth expert, a psychologist, testified that Greider had an explosive personality. The doctors admitted, however, that their estimate of the extent of drug abuse was based on information obtained from Greider. Greider argues that the state did not rebut the diagnosis of toxic psychosis nor did the state present its own expert witnesses. The state was not required to rebut the diagnosis, *see Williams v. State*, 393 N.E.2d 183 (Ind.1979), nor was the state required to present expert witnesses. *Riggs v. State*, 264 Ind. 263, 342 N.E.2d 838, 841 (1976).

As evidence that Greider was capable of "entertaining specific intent," or that the acts were not acts of a diseased mind, the Indiana court pointed to Greider's acts of feeling for his victim's pulse, seeking assistance for his own cut, and insisting upon reading the hospital form before signing as actions of a man capable of entertaining a specific intent. *See also Stout v. State*, 262 Ind. 538, 319 N.E.2d 123 (1974); *Taylor v. State*, 260 Ind. 264, 295 N.E.2d 600 (1973), *cert. denied*, 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250. Moreover, as further evidence that Greider was capable of conceiving a design, the court pointed to his actions of sawing off a shotgun, going armed to the victims' apartment, firing three separate shots and concealing the weapons.

The *Greider* court concluded that the facts and circumstances surrounding the shootings, as related by Greider, provided sufficient evidence to sustain the jury's conclusion that he was sane at the time he fired the gun. Facts which the court found probative were (1) despite Greider's claims

that he did not remember aiming the gun at the victims, the victims were both shot directly in the head; (2) Greider checked to see if Dingman was alive; and (3) Greider admitted unloading and hiding the guns. Other probative evidence were the testimony of lay witnesses Jurick, Greider's neighbor, who drove him to the hospital; Dr. Bajusz, the emergency room physician who treated Greider's knife wound; and Camacho, an emergency room orderly, all of whom noticed nothing unusual in Greider's manner, speech or ambulation.[10] Other lay witnesses who testified about Greider's drug addiction had not seen him the day of the crime, but they had seen Greider days before or after the crime. Thus, their opinions on Greider's sanity lacked immediacy.

■ The jury could credit the testimony of lay witnesses over that of an expert witness. *Jacks v. Duckworth*, 651 F.2d 480, 487 (7th Cir.1981), *cert. denied*, 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300. *Moore v. Duckworth*, 581 F.2d 639, 642 (7th Cir. 1978), *aff'd* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865. And, the jury may credit the testimony of lay witnesses who observed Greider shortly after commission of the crime, *Moore v. Duckworth*, 581 F.2d 639. In sum, the jury may "consider expert testimony in light of all other testimony presented ... and not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity." *Jackson v. State*, 402 N.E.2d 947, 950 (Ind. 1980).

### D.

■ Finally, a federal court exercising habeas jurisdiction must accord a "presumption of correctness" to factual determinations of state courts so long as the factual findings are fairly supported by the

---

crime or an ancillary ingredient that the legislature has directed the government to prove."

**9.** For operation of the defense where claim is toxic psychosis or toxic reaction, *see Norris v. State*, 419 N.E.2d 129 (Ind.1981); *Jackson v. State*, 402 N.E.2d 947 (Ind.1980); *Williams v. State*, 393 N.E.2d 183 (Ind.1979); *People v. James P. Free, Jr.*, 94 Ill.2d 378, 402–03, 69

Ill.Dec. 1, 13–15, 447 N.E.2d 218, 230–32 (1983).

**10.** Nurse Labascal, the only witness who gave a contrary opinion, testified that Greider's eyes were watery and speech slurred. She ventured no opinion on whether he knew right from wrong or was able to conform his conduct to the law.

record. *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). The Indiana Supreme Court determined that there was substantial evidence of probative value to support the jury's conclusion that Greider was sane at the time of the offense. The district court found the state court opinion an accurate statement of the facts. Greider has not demonstrated to us that this factual finding is erroneous or not supported by the record. *Sumner,* 449 U.S. at 550, 101 S.Ct. at 771. Thus, we conclude that a rational factfinder could have inferred that Greider was capable of entertaining specific intent on the day he committed the murders, or that his acts were not the acts of one suffering from mental disease such that he was unable to appreciate the wrongfulness of his conduct. *See Jackson v. Virginia,* 443 U.S. 307, 325, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979).

For the foregoing reasons, the judgment of the district court is affirmed.

POSNER, Circuit Judge, concurring.

In holding that a rational trier of fact could have found Greider, the defendant, sane beyond a reasonable doubt when he killed his two victims, and that therefore he was not denied due process of law under the standard of *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), my brethren have assumed a greater burden of review than is necessary. *Jackson* is limited to facts necessary to establish the state's prima facie case; since sanity is not such a fact, we do not have to worry whether a rational jury could find it proved beyond a reasonable doubt. I therefore disagree with the statement in footnote 8 of the majority opinion, and in *Stacy v. Love,* 679 F.2d 1209, 1213 (6th Cir.1982), that once the state places on the prosecution the burden of proving a fact—any fact—beyond a reasonable doubt, *Jackson* applies. Neither opinion offers a reason for the statement. *Stacy* cites no authority for it. This court's opinion cites *Stacy* and one other case, *Walker v. Butterworth,* 599 F.2d 1074, 1079 (1st Cir.1979), but *Walker* holds very nearly the opposite of the proposition that my

brethren cite it for. It upheld Massachusetts' "presumption of sanity" against the argument that it was inconsistent with the state's judge-made rule (similar to Indiana's) requiring proof of sanity beyond a reasonable doubt, and did so on the ground that *Jackson* does not require the state to comply with a judge-made burden of proof that relates to an affirmative defense rather than an element of the crime. *Id.* at 1079–80. It is true that the opinion in *Walker* contains a dictum, see *id.* at 1079–80 n. 6, rather casually offered as it seems to me, that if the Massachusetts legislature rather than courts had required proof of sanity beyond a reasonable doubt, the *Jackson* standard would apply. But the dictum is inapplicable to this case, and the holding is directly opposed to footnote 8 of this court's opinion.

*Jackson v. Virginia* was a sequel to *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), which held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson* set forth the standard for deciding whether the requirement of *Winship* has been met in a particular case. To assume that *any* fact that the state requires its prosecutors to prove beyond a reasonable doubt, such as sanity in the present case, is subject to federal judicial review under *Jackson* is not supported by the language of *Winship* ("every fact necessary to constitute the crime") or of *Jackson* itself ("the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16), and ignores *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which held that since *Winship* requires the prosecutor to prove beyond a reasonable doubt only those facts "included in the definition of the offense of which the defendant is charged," *id.* at 210, 97 S.Ct. at 2327, a state may place the burden of proving affirmative defenses such as insanity on the defendant. The Court expressly reaffirmed *Leland v.*

*Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), which had held that a state could require the defendant to prove insanity beyond a reasonable doubt. 432 U.S. at 207, 97 S.Ct. at 2325. *A fortiori,* the prosecutor does not—at least as a matter of federal constitutional law—have to prove the defendant's sanity beyond a reasonable doubt. *Walker v. Butterworth, supra,* 599 F.2d at 1079. See also *United States v. Greene,* 489 F.2d 1145, 1155 (D.C.Cir.1973). It should therefore be immaterial, to a federal court asked to exercise its power under the habeas corpus statute to set aside an unconstitutional state conviction, whether the prosecution in this case failed to prove Greider's sanity beyond a reasonable doubt.

This is true even though at the time of the killings Indiana law placed that burden on the prosecutor. It may help in seeing why it is true to contrast two views of what the due process clause of the Fourteenth Amendment requires of state criminal prosecutions. One is that it requires them to comply with specific provisions of the Bill of Rights. Another is that it requires compliance only with minimum contemporary standards of civilized criminal procedure, defined separately from the specifics of the Bill of Rights. *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), is the *locus classicus* of this view. Although the first view is in the ascendant today, it has no application to this case, since the Bill of Rights does not specify a standard of proof in criminal cases. Only the second is available to guide our decision.

In this day and this society, proof of guilt beyond a reasonable doubt is a component of civilized criminal procedure, but—*Patterson* shows—not with respect to every fact pertinent to guilt. The facts that a defendant seeks to prove in order to make out an affirmative defense are pertinent to guilt; if the defense succeeds, the defendant is not guilty of the offense charged. But *Patterson* makes clear that a state is not required to prove the absence of such facts—to prove sanity, for example—beyond a reasonable doubt, or even by a preponderance of the evidence. That is why we could not set aside Greider's conviction even if his sanity

had not been proved beyond a reasonable doubt. The fact that the Indiana courts at the time insisted that the prosecution prove the defendant's sanity beyond a reasonable doubt means only that a failure to carry this heavy burden precluded conviction as a matter of state law. That is no concern of ours, since the due process clause does not require that state criminal convictions be free from errors of state law. *Gryger v. Burke,* 334. U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982).

In short, the allocation of the burden of proof with regard to affirmative defenses is up to the state, *Walker v. Butterworth, supra,* 599 F.2d at 1079–80—provided the defenses do not negate an element of the offense, see *United States v. Read,* 658 F.2d 1225, 1232–33 (7th Cir.1981). This is an important qualification. Greider's argument can be recast as an argument that the state failed to prove beyond a reasonable doubt an essential element of the offense of murder (as it was defined by the law of Indiana when Greider killed his victims), namely "premeditated malice." This means, so far as is relevant to this case, that "the actor's shooting the gun (*i.e.,* the voluntary act) was done with the subjective desire to kill a human being . . . ." *Carter v. State,* 408 N.E.2d 790, 794 n. 6 (Ind.App. 1980) (dictum).

You can be insane yet still be capable of entertaining the subjective desire to kill a human being. But you cannot be convicted of murder if you are so crazy that you kill without knowing what you are doing. (Morris, Madness and the Criminal Law, ch. 2 (1982), explains this distinction.) Thus, if Greider was under the delusion that he was shooting two gerbils rather than two human beings, he could not be guilty of murder, but if his delusion took the form of thinking that he had a sacred duty to reduce the human population by two, he could be guilty of murder, at least guilty prima facie, though he might have a defense of insanity. Because a state of mind requirement is part of the prima facie case of

murder, even if the defense of insanity were abolished (as Professor Morris among others urges it should be) some insane killers would still escape conviction for murder, because their insanity had prevented them from forming the intent required of a murderer.

The validity of the suggested distinction between an insane mind and a mind incapable of premeditated malice depends, of course, on the legal meaning of "insanity." If sanity in the law meant ability to form the intent defined as premeditated malice, then proof of sanity and proof of the mental element of the crime of murder would be the same thing and the due process clause would require proof of sanity beyond a reasonable doubt after all. That may have been the meaning of sanity in the era of the M'Naghten Rules. The language of *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), which required federal prosecutors to prove sanity beyond a reasonable doubt, and which dates from the M'Naghten era, is suggestive: "No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged." *Id.* at 493, 16 S.Ct. at 360.

At a time when Indiana followed the M'Naghten Rules (supplemented by the doctrine of "irresistible impulse"), the Indiana Supreme Court, too, may have equated proof of sanity with proof of the mental element required for murder. See *Flowers v. State,* 236 Ind. 151, 163, 139 N.E.2d 185, 193 (1956). But that court adopted a broader definition of insanity in *Hill v. State,* 252 Ind. 601, 251 N.E.2d 429 (1969), and it is no longer possible to regard the legal meaning in Indiana of sanity as identical to the state of mind required to convict a man of murder. This is also suggested by *Price v. State,* 412 N.E.2d 783, 785 (Ind.1980), where the Indiana Supreme Court upheld the new Indiana statute, see Ind.Code § 35–41–4–1, which requires the defendant to prove insanity by a preponderance of the evidence.

The statute would be unconstitutional if sanity were an element of the offense of murder (the offense involved in *Price* as in this case). Although the *Price* opinion is not entirely clear, its statement that "early Indiana cases hold that sanity is an element of a crime which requires a specific intent," 412 N.E.2d at 785, implies, in context, that later cases do not. Finally, in a recent decision of the Indiana Supreme Court we find the explicit statement that "the test in Indiana does not require the action of the defendant to be 'unknowing' to afford the defense of insanity." *Ward v. State,* 438 N.E.2d 750, 753 (Ind.1982).

*Winship,* applied to this case, thus required proof beyond a reasonable doubt not of Greider's sanity but of something distinct and less difficult to prove—his "premeditated malice." See *Hughes v. Mathews,* 576 F.2d 1250, 1255 (7th Cir.1978). And therefore *Jackson* requires us to determine not whether a rational jury could have found Greider sane beyond a reasonable doubt but only whether it could have found that the state had proved beyond a reasonable doubt that Greider had acted with premeditated malice.

Greider must have been conscious when he shot his two victims—otherwise he could not have shot so straight—and his behavior right after the shooting, though maybe consistent with drug-induced insanity, is inconsistent with an inference that he was so crazed at the time of the shooting that he could not have appreciated the significance of what he was doing—could not have formed "the subjective desire to kill a human being." This much a rational trier of fact certainly could have found beyond a reasonable doubt; if so, we need go no further in order to affirm the denial of Greider's petition for habeas corpus.

I should add that I find the majority opinion (all but footnote 8) persuasive; but I would place decision on a different ground.