CARL E. HIGHTOWER *v.* STATE OF INDIANA.

[No. 771S201. Filed June 1, 1973. Rehearing denied August 13, 1973.]

*Forrest Bowman, Jr.,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction of statutory rape (IC 1971, 35-13-5-3, being Burns § 10-4201), after a trial by jury in the Owen Circuit Court, Judge William T. Sharp presiding. Appellant was originally charged with three offenses: a statutory rape of one Rebecca Gentry on August 1, 1969, an assault and battery with intent to gratify sexual desires on Rebecca Gentry on January 30, 1970, and a statutory rape of one Brenda Gentry on January 31, 1970. All three of these causes were consolidated for trial by agreement of the parties and were submitted to a trial by jury. The jury acquitted appellant on the two offenses alleged to have taken place in January of 1970, and returned a verdict of guilty on the statutory rape of Rebecca Gentry alleged to

have taken place in August of 1969. Appellant was sentenced to two to twenty-one years in prison. He bases his appeal on two grounds: one, that the evidence at trial was insufficient as a matter of law to sustain his conviction, and two, that he was deprived of a fair trial as guaranteed to him by the Due Process Clause because of the alleged misconduct of the prosecutor during his trial.

Testimony concerning the offense for which appellant was convicted was given by Rebecca Gentry. She testified that on August 1, 1969, she went to the Spencer Fair with appellant, her brother and her sister, Brenda Gentry. After attending the fair they all went to some cabins owned by the appellant located nearby to spend the night. Rebecca's brother went to one of the smaller cabins and she and her sister Brenda shared a bed in the bedroom of appellant's cabin. Appellant slept on an extra bed in the living room of the same cabin.

Rebecca was awakened by appellant later that same night getting into bed with her. Appellant began to kiss her. She testified that she attempted to resist appellant but that he held her arms. Appellant then pulled down the pajamas Rebecca was wearing and had sexual intercourse with her. She testified that appellant, "put his penis in my privates." Rebecca further stated that Brenda then began to stir and appellant got up and went back to the living room. Rebecca testified that she was fifteen years old at the time of the incident.

The statute with which we are concerned here provides in part, "whoever has carnal knowledge of a . . . female child under the age of sixteen years . . . is guilty of rape." (Burns § 10-4201). At the outset we should again establish our function as an appellate court in appeals of this nature. On such an appeal which contests the sufficiency of the evidence this Court will not weigh the evidence nor resolve questions concerning the credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Smith* v. *State*

(1970), 254 Ind. 401, 260 N. E. 2d 558. We are required to insure that there is evidence of probative value on each element of the offense from which a jury could infer that appellant was guilty beyond a reasonable doubt. *Turner* v. *State* (1972), 259 Ind. 344, 287 N. E. 2d 339.

The testimony of Rebecca Gentry concerning an act of sexual intercourse with appellant at a time when she was fifteen years old clearly establishes the elements of the offense charged. Appellant, however, asserts that the age of the victim and certain contradictions in her testimony concerning the dates of the other offenses charged brings her within the rule of *Meadows* v. *State* (1968), 252 Ind. 1, 238 N. E. 2d 281, and makes her testimony, standing alone, insufficient as a matter of law to sustain his conviction. The *Meadows* case concerned a sole prosecuting witness who had been committed to a mental institution and who alternately testified from the stand that the defendant had and had not done the illegal acts charged. These facts of the *Meadows* decision are obviously not analogous to the facts here. The witness in the case at bar has never been admitted to a mental institution, nor did her testimony concerning the substantive facts upon which the appellant was convicted ever conflict or deviate in any way. It has long been held in Indiana that the testimony of a victim under sixteen, even though uncorroborated, is of itself sufficient evidence to sustain a conviction for rape, provided each and every material element of the crime charged was contained in her testimony. *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *Montgomery* v. *State* (1967), 249 Ind. 98, 229 N. E. 2d 466; *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649.

Appellant next asserts that the trial court erred in not granting a mistrial because of the alleged misconduct of the prosecutor. Appellant contends that the prosecutor's misconduct during the trial was in its totality so repetitious and prejudicial as to deprive appellant of a fair trial as guaranteed by the Due Process Clause and that the trial court

should have declared a mistrial. Appellant's claims seem based primarily on one specific incident concerning the recall of a State's witness by the prosecutor for the purpose of changing her testimony, and two general areas: the consistent use of leading questions and the continued use of questions which could call for hearsay testimony. We shall deal with the specific ground first and the two general areas last.

The first time Rebecca Gentry testified at this trial she stated on the night of January 30, 1970, she and her sister Brenda went skating at Johnnie's Skating Rink located near appellant's cabins in the company of appellant. Toward the end of the State's case Rebecca was recalled to the stand by the prosecutor and changed that part of her original testimony concerning the activities of the night of January 30, 1970. She stated that she had been mistaken in her original testimony and that they had gone shopping in Bloomington that night and did not attend Johnnie's. According to Rebecca she became confused because on other week-ends she stayed at appellant's cabins after they had gone skating at Johnnie's. She did, however, reaffirm her previous testimony concerning the alleged assault on her by appellant on that date. On cross-examination appellant's counsel established that the prosecutor had approached Rebecca after her original testimony and asked her if she was certain they had attended Johnnie's that night. Rebecca asked her sister and then recalled that Johnnie's had been closed and they had gone to Bloomington instead.

Appellant asserts that his motion for mistrial made at that point should have been sustained because the witnesses Rebecca and Brenda had violated the court's order prohibiting the discussion of testimony among witnesses, and that the prosecutor had acted incorrectly in aproaching Rebacca and asking her about her testimony. It might be pointed out that technically the order was not violated since it applied only to witnesses who had not yet testified and both Rebecca and Brenda had already testified

when the conversation about Johnnie's took place. In any event it can hardly be said that the remedy for a violation of this court order, if indeed there was one, is a mistrial. There is no reason why this testimony should not be admissible much less require a reversal of a conviction. The jury was completely informed of the conversation between the witnesses after Rebecca's original testimony and was given adequate information by which it could judge the reliability and credibility of the revised testimony. All of this is in complete accord with the jury's prime function of determining the weight which testimony should be afforded. If the trial court found that the conversation between Rebecca and Brenda had violated its order it could take appropriate steps to enforce it or punish its violation, but it cannot be said that such a violation automatically entitles a defendant to a new trial.

The allegation concerning the role of the prosecutor in Rebecca's revised testimony is also without merit since conversations between attorneys and their witnesses are never barred by court orders such as this one, and the order in this case does not attempt to do so. It is certainly not improper for any attorney to discuss the testimony of his witnesses with them before or after they have testified. Furthermore this conversation was fully explored on cross-examination by defense counsel and the jury was again adequately apprised of this aspect of the revised testimony.

Appellant's allegation that the revised testimony of Rebecca Gentry deprived him of due process fairness is therefore without merit since there was no error, or any impropriety, concerning the admissibility of this testimony at the trial. The more general allegations which appellant makes concerning due process violations arises from the method of examination used by the prosecutor with several of the State's witnesses.

After the opening testimony of Rebecca Gentry outlined at the beginning of this opinion concerning the offenses of August, 1969, the trial focused on the alleged offenses of January 30th and 31st, 1970. The remainder of Rebecca's

testimony concerning occurrences on January 30, 1970, and included collateral testimony by her as to places appellant and she visited that night. Brenda Gentry's entire testimony concerned the alleged offense of January 31, 1970. Two other State witnesses testified as to seeing appellant with the two Gentry girls on the weekend of January 30th and 31st, 1970. Appellant contends that the prosecutor consistently asked leading questions throughout the testimony of these three witnesses. The record does reveal that the prosecutor asked many leading questions during the testimony of Rebecca concerning January 30th, and throughout the testimony of the other three witnesses. It should be noted, however, that appellant's counsel's objections to these questions were consistently sustained and the jury was admonished to disregard the questions and the answers when the answers were given.

Appellant's second general contention is that the prosecutor consistently called for hearsay testimony from another State's witness, the mother of a little girl who also testified at the trial. The little girl testified that in July of 1970, she had been molested in a park by a man who apparently was thought to be appellant, but at trial the girl could not identify the appellant as the man who allegedly molested her.[1] The prosecution then called the little girl's mother to testify about events occurring the next day when she went to the park with her little girl and two detectives to observe appellant. Her testimony concerned her observations the day she was in the park and was generally innocuous and consisted only of relating how appellant had sat down on the bench by her little boy. At this point in her testimony the prosecution began questioning the witness about what her little girl had told her of the alleged incident in the park on the previous day. Appellant properly objected to each of about four of these types of questions, the court properly sustained all objections

---

1. It should be noted that we do not rule on the admissibility of this type of evidence here and whether or not it would be proper because of the nature of the charges involved since appellant has not raised this contention on appeal.

and correctly admonished the jury to disregard any answer hastily given.

The aspect of due process that appellant relies on here is the general area of "fairness" in the proceedings of a trial. The contention is that there was error committed by the trial court in not granting a mistrial because this type of questioning by the prosecutor had prejudiced the appellant and deprived him of a fair trial. It must be noted, however, that those instances underlying the mistrial motion are not "errors" committed by the trial court in ruling on these matters. What is actually complained of here are irregularities during the course of trial; a very general theory which is grounded on the assumption that the very number of common and expected objections to simple evidentiary matters can, in their totality, taint the fairness of a trial and mandate reversal irrespective of the fact that the trial court has consistently ruled in appellant's favor and consistently admonished the jury to disregard any improper evidence.

It must further be emphasized that this appeal is not based on the existence of a constitutional error at the trial in the sense that the irregularity complained of concerned rights secured by either the Federal or State Constitutions. We have held that when such is the case we must weigh the impact of the error on the jury and subject the verdict to a close scrutiny to determine if the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1969), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N. E. 2d 387. Nor does this case concern the type of evidentiary harpoon of a highly prejudicial nature which we discussed in *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312. In that case we held that this Court must be able to say with certainty that such improper evidence did not affect the verdict of the jury, not withstanding the admonition of the trial court to disregard it.

When we are confronted with an appeal such as this, however, which is grounded in general fairness and does not con-

cern constitutionally guaranteed rights or highly preju-
dicial evidentiary harpoons, it would not be consistent
with our function as an appellate court if the mere
existence of an arbitrary number of simple leading questions
or questions calling for hearsay answers would automatically
require us to search the record and insure that the jury's
verdict corresponded to our general sense of fairness. We
cannot be called upon to substitute our sense of fairness for
a jury's sense of fairness on such elastic, arbitrary and gen-
eral grounds. When irregularities such as this are the ground
of the appeal there should be a strong presumption that the
jury was able to follow the admonitions of the trial court
to disregard any hastily given evidence. In cases concerning
an irregularity bearing on a constitutionally secured right
or concerning an evidentiary harpoon we do undertake to
assess the probable impact of the irregularity on the final
verdict of the jury and we do require a high level of assurance
that the irregularity did not affect the verdict before we
will affirm the judgment. However in cases involving simple
irregularities as here we may rely on a lower level of assur-
ance concerning the impact on the jury because the likelihood
of their effect on substantial rights is much less. If the ap-
pellant cannot demonstrate to us that these irregularities
have had a discernible and apparent effect on the verdict of the
jury we will not undertake to scrutinize the evidence at trial
in relationship to the verdict of the jury and subject it to a
test of fairness.

The case here does not demonstrate that the irregularities
at the trial have had a discernible and apparent impact on
the verdict of the jury. Quite the contrary it is evident that
the jury here followed its instructions quite correctly. The
evidence as to the offense committed by appellant on August
1, 1969, against Rebecca Gentry was clear and uncontradicted
throughout the trial. The majority of the trial was concerned
with the offenses alleged to have been committed in January
of 1970, and it is within these charges that the alleged irregu-

larities appeared on the record. Appellant offered a partial alibi as to the offenses in January of 1970, through the testimony of his wife, and apparently the combination of the admonishments of the judge to disregard certain evidence and the alibi testimony submitted by appellant's wife were considered by the jury since they returned a verdict of acquittal on all the charges of January, 1970.

Judgment of the trial court is therefore affirmed.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 296 N. E. 2d 654.