Lee Thomas LYNK, Appellant,

v.

STATE of Indiana, Appellee.

No. 878S157.

Supreme Court of Indiana.

Aug. 29, 1979.

Nile Stanton, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted of first degree felony murder and first degree premeditated murder in 1975 and his conviction was affirmed on direct appeal. *May, Lynk v. State,* (1976) 265 Ind. 25, 349 N.E.2d 171. Thereafter appellant was granted post-conviction relief by the trial court in the form of a new trial. Following such new trial in 1978 appellant was again convicted on both murder counts and was again sentenced to life imprisonment. He now appeals from this most recent conviction on several grounds which may be categorized as (1) misconduct by the trial prosecutor; (2) admission of hearsay testimony; (3) impermissible restriction of cross-examination; (4) failure of prosecution to disclose a plea agreement with a witness; and (5) improper sentencing.

The State's evidence established that the Howard Johnson Motor Lodge in Hammond, Indiana was robbed in the early morning hours of July 21, 1974, by appellant, Johnny May and Ervin Hall. The three arrived at the motel in a vehicle. Hall stayed in the vehicle while appellant and May actually went into the motel. Appellant was armed with a shotgun; May was armed with a .32 caliber handgun. In the course of the robbery May shot and killed the motel employee on duty at the front desk. May and appellant then ran to the waiting car and Hall drove away. May stated that he had just killed a man. Both men had blood on their hands and sleeves. They had gotten about $80 in the robbery and Ervin Hall was given $5 of it.

## I.

■ Ervin Hall was the source of critical evidence against appellant in the form of oral testimony and a prior written statement. At the time of trial Hall was serving a sentence for an unrelated robbery. He was called as a witness by the State and his questioning by the prosecution and defense took up almost an entire half day of trial. He first testified that he and Lynk had stayed in the car while May went in and robbed the motel. Later, after a recess and a private conference with the trial prosecutor, Hall changed his story and testified that appellant Lynk had gone into the motel with May and had returned to the car running with May, and that both had blood on their hands and sleeves.

When it became evident that the witness was changing his story, he was interrupted at the behest of the defense, and a proceeding took place outside the presence of the jury. The prosecuting attorney readily stated that he had had discussion with the witness during the recess. The defense sought to uncover the reason for the changed testimony of the witness and requested an "evidentiary hearing" to delve into the content of the discussion. The court refused to permit defense counsel to question the witness directly, but propounded questions to the witness which defense counsel requested, and supplemented those questions with questions of its own. Appellant argues that the court erred in denying his request for an "evidentiary hearing". No case law on point is cited; however, the statement is made that the procedure utilized prevented the details of the conversation from being fully brought out into the open. We are of the opinion that the purpose of the requested hearing was to provide the defense with the means of conducting an effective cross-examination of Hall later on before the jury and that the procedures utilized by the trial court adequately satisfied this limited purpose.

The circumstances shown by the record presented disclose that after the witness Hall testified that appellant Lynk had not gone into the motel with May, the prosecution produced a prior written statement of Hall in which he asserted that Lynk had indeed gone into the motel with May. During the recess which followed this development, Hall asked the bailiff to contact the trial prosecutor for him. When Hall and the trial prosecutor then met, a pre-trial proposal by the prosecution was discussed, and negotiations concerning it were reopened. The terms of the proposal had been that the favorable testimony and cooperation of Hall at the forthcoming trial of appellant Lynk would produce a favorable letter to the parole board for him and that uncooperative conduct would produce an unfavorable such letter. Hall had rejected this proposal prior to trial. The terms of this proposal had been made known to the defense prior to trial. The discussion between Hall and the trial prosecutor resulted in some clarification of the proposal, but no change was made by the prosecution in it. The witness apparently made a decision on the spot to accept the proposal, as he then, following the recess, assumed the witness stand and gave oral testimony that Lynk had gone into the motel with May. After this oral testimony the prosecution indeed caused the written statement of Hall to the same effect to be introduced into evidence and read to the jury.

Appellant contends that the conversation between the witness Hall and the trial prosecutor during the recess in direct examination was an improper intimidation of the witness and misconduct by the prosecutor, and that the trial court erred in denying his motion for mistrial based thereon. *Hightower v. State,* (1973) 260 Ind. 481, 296 N.E.2d 654, is an authority on this question. In that case the prosecution recalled a State's witness prior to resting its case in chief and upon further questioning the witness made a significant change in her original testimony. There the witness had been approached by the prosecutor during a pause in the trial and a discussion ensued with regard to the accuracy of the witness' original testimony. There we said:

"It is certainly not improper for any attorney to discuss the testimony of his witnesses with them before or after they

have testified. Furthermore this conversation was fully explored on cross examination by defense counsel and the jury was again adequately appraised of this aspect of the revised testimony." 260 Ind. at 486, 296 N.E.2d at 658.

In the case at bar unlike the situation in *Hightower* the conversation occurred between the witness and the prosecutor during the course of direct examination rather than "before or after" such testimony, and the change in testimony was critical to the prosecution's case. And in the case at bar, the witness Hall had displayed a degree of hostility toward the prosecution. In spite of these differing factors, the logic and underlying general principle in *Hightower* are clearly applicable here. In both cases the conversation precipitated the change in testimony and the change resulted in the production of relevant evidence helpful to the prosecution. The content of the conversation in the case at bar between the witness Hall and the trial prosecutor were forthrightly admitted by the trial prosecutor, were brought out by the trial prosecutor during the continuance of the direct examination of the witness, and the witness was subjected to detailed cross-examination into his motivation for changing his testimony. The offer of the prosecution which was rejected by the witness before trial and then accepted in trial was known to defense counsel prior to trial. The jury was provided with the substance of the agreement and therefore the means by which to fairly judge the credibility of Hall's oral testimony. Moreover, any vestigial danger to the fairness of the proceedings flowing from the procurement of the witness' oral testimony in this manner must be deemed significantly reduced by the fact that the modified version of events was presented to the jury in the witness' 1974 written statement as well as in his in-court oral testimony. Consequently we find no misconduct on the part of the trial prosecutor and no error in the denial of the motion for mistrial.

Appellant relies on the cases of *Adler v. State,* (1961) 242 Ind. 9, 175 N.E.2d 358; *Wasy v. State,* (1957) 236 Ind. 215, 138 N.E.2d 1; *Sylvester v. State,* (1933) 205 Ind. 628, 187 N.E. 669. In these cases the trial prosecutor placed irrelevant and highly inflammatory matter before the jury through improper final argument, questioning of witnesses and statements in open court. These cases are not apposite to the case before us. Federal cases cited by appellant involve the suppression by the prosecution of threats made by it for the purpose of attempts by the prosecution to suppress testimony favorable to the defense through threats of reprisal. Circumstances such as those do not obtain here.

## II.

▉ Following the robbery of the Howard Johnson Motel, appellant, May and Hall drove to a nightclub where they met Hall's sister, Debbie, and appellant Lynk's wife. A conversation took place in which the robbery and killing were revealed to the two women. Over hearsay objection the trial court permitted Debbie Hall to testify that during the course of this conversation May stated that something had not gone right and that a man had to be killed. She then testified without objection that appellant Lynk then said: "I like the way I do business." Debbie Hall then testified that she asked May if he was serious about a man being killed and May replied, yes. At this point she further testified without objection that appellant Lynk then said: "Death ain't no joke."

Appellant contends that May's alleged statements, admitted through Debbie Hall, were inadmissible hearsay. The statements attributed to appellant Lynk by this witness were not inadmissible as hearsay as they were his own utterances. *Jethroe v. State,* (1974) 262 Ind. 505, 319 N.E.2d 133. These statements of appellant, "I like the way I do business" and "Death ain't no joke" standing alone have little meaning, and require the statements of May to give them meaning and character. The accompanying statements of May make them intelligible to the trier of fact. Lynk's statements indicate that he adopted the statements of May as his own, and therefore May's statements were admissible in conjunction with

his own as they come within the exception to the hearsay rule for admissions of a criminal defendant. *Robinson v. State,* (1974) 262 Ind. 463, 317 N.E.2d 850; *Montes v. State,* (1975) 263 Ind. 390, 332 N.E.2d 786; *Cunningham v. State,* (1971) 256 Ind. 135, 267 N.E.2d 181.

Appellant contends that the statements of May were not admissible as a declaration against interest. This contention, if correct, is of no avail as the above rationale for admission of the statements is separate and sufficient to support the decision of the trial court.

### III.

■ During the trial the witness Ervin Hall was held in jail, and was found to be in possession of marijuana. Debbie Hall, his sister and also a prosecution witness, was suspected among others of having slipped the contraband to him. During the direct testimony of Debbie Hall the trial court was advised of these developments and upon motion of the prosecution the trial court ruled that the defense could not inquire of Debbie Hall during cross-examination whether she had smuggled marijuana to her brother. Appellant contends that proof of her willingness to perform illegal acts for her brother would show a great love and affection for him and a consequent bias. Appellant argues that the ruling was error in that it prevented him from showing that bias. In *Clark v. State,* (1976) 264 Ind. 524, 348 N.E.2d 27, we observed that courts should be liberal in criminal cases in permitting the bias of witnesses to be delved into for the purpose of impeachment, but that the trial judge has considerable authority in regulating the process. Here the defense sought an admission by a witness of prior illegal activity which had not resulted in a conviction. The probability that she would deny the charge was very great as there was little evidence of her guilt, and as any admission of guilt would be against her interest and that of her brother. Therefore, in all likelihood the jury would be left to deal with the false and confusing residual impression that illegal activities had taken place under the auspices of the witness or her brother. Furthermore, at the time the judge ruled as he did the jury was already aware from other testimony that Debbie Hall was the sister of the witness Ervin Hall and that her interests were aligned with his. And finally, the love and affection which might have been so great as to render her willing to perform an illegal act for him, standing apart, provides little motive on her part to inflict injury on the party, appellant Lynk, by falsifying or coloring her testimony. The likelihood that the proposed questions would have resulted in an impeaching effect was negligible. We therefore, find a reasonable and adequate basis for the trial judge's ruling.

### IV.

■ Appellant next contends that there was a plea agreement between the witness Ervin Hall and the State which was not disclosed to the defense and that such nondisclosure denied him due process of law. In order to support the factual contention that such an agreement existed, appellant established in his motion to correct errors that a charge of possession of marijuana had been filed against Hall during the trial below, and dismissed thereafter, and that the filing of such charge was not disclosed. In *Birkla v. State,* (1975) 263 Ind. 37, 323 N.E.2d 645, this Court held that when a prosecution witness testifies in return for favorable treatment by the State, the prosecution must disclose the agreement and its terms. In the case at bar the prosecution disclosed the events surrounding the alleged possession of marijuana in a timely fashion during the trial as they were developing. The trial prosecutor stated that an investigation into the events was in progress and might or might not lead to formal charges. The filing of the formal charge, the lone formative event of which defense counsel clearly stood ignorant during trial, did not occur until after Hall had completed his testimony. In addition to these considerations it is evident that the charge was a mere misdemeanor filed in county court, and was minor when compared with the offense for which Hall was already confined

in prison. The penal interest of the State was not great in seeking a conviction on that charge. We agree with the assertion of the State here that to draw the conclusion that Hall or his sister Debbie testified in return for an agreement by the prosecution to later dismiss the possession charge against Hall would be pure speculation.

## V.

At the time of the robbery of the Howard Johnson Motor Lodge by appellant and May on November 14, 1974, the crime of murder according to basic statute was punishable by death or life imprisonment. Acts 1973, P.L. 328, Ind.Code § 35–13–4–1(a) (repealed). By the time appellant was last sentenced on March 23, 1978, the penalty for murder had been changed by legislative repeal to a determinate term of from thirty to sixty years or death. Ind.Code §§ 35–42–1–1, 35–50–2–3, and 35–50–2–9. Appellant filed a motion to be sentenced to a determinate term under the law in existence at the time of his sentencing; however, the trial court denied the motion and sentenced appellant to life imprisonment pursuant to the law in effect at the time of the charged offense.

■ Appellant first contends that the intent of the people of Indiana as announced by their Legislature is that persons in appellant's position serve determinate terms of imprisonment. The express pronouncement of the Legislature is to the contrary. The Legislature said in effect in Acts 1977, P.L. 340, § 150, p. 1611, which became operative October 1, 1977, that the repeal of the 1973 murder statute in force at the time of appellant's crime did not affect prosecutions begun under that statute before October 1, 1977, the date of the repeal of that statute. It also stated that such prosecutions would continue and that penalties should be imposed as if repeal had not occurred. The criminal prosecution of appellant for this murder was commenced in 1974 and therefore the penalty of life imprisonment was properly imposed upon appellant.

■ Appellant has flatly asserted in his motion to correct errors and in his appeal brief that the imposition by the court of life imprisonment rather than a determinate term constitutes "vindictive justice" proscribed by Art. 1, § 18, of the Indiana Constitution. The Court is directed to the cases of *Wolfe v. State,* (1977) Ind., 362 N.E.2d 188 and *Maynard v. State,* Ind.App., 367 N.E.2d 5. In these cases and in *Dowdell v. State,* (1975) Ind.App., 336 N.E.2d 699, upon which they relied, the constitutional issue raised by appellant here was not presented and decided. Those cases involve issues of statutory construction, and the legal arguments contained in them which support the resolution of those issues do not support the conclusion urged upon us by appellant. Consequently, resolution of this new constitutional issue would place this Court in the dilemmatic position of having to construct legal arguments for and against appellant's position and hypothetical fact circumstances encompassed in the problem. *Board of Commissioners of Howard County, Indiana v. Kokomo City Plan Commission,* (1975) 263 Ind. 282, 330 N.E.2d 92; *Bowen v. State,* (1975) 263 Ind. 558, 334 N.E.2d 691; *Indiana Aeronautics Commission v. Ambassadair, Inc. et al.,* (1977) Ind., 368 N.E.2d 1340. The trial judge's imposition of life imprisonment as provided by the 1973 murder statute is wholly consistent with and expressly authorized by Acts of 1977, P.L. 340, § 150, which statute is presumptively constitutional. Accordingly, we are unable to conclude that the penalty imposed upon appellant was violative of Art. 1, § 18, of the Indiana Constitution.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.