**Wendell W. DAVIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 180S14.**

Supreme Court of Indiana.

March 26, 1981.

Barry L. Standley, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., John Silk, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction for burglary, class C felony, Ind.Code § 35–43–2–1, and theft, class D felony, Ind. Code § 35–43–4–2. Appellant was sentenced to consecutive terms of eight years and four years on the counts respectively.

Defendant raises two issues on appeal: (1) whether the trial court erred in denying a motion for a mistrial; and (2) whether the theft count was supported by sufficient evidence.

We do not have jurisdiction of this case under Ind.R.App.P. 4(A)(7), since no single sentence is greater than ten years. *Menefee v. State*, (Ind.1981) 417 N.E.2d 302. We do, however, exercise our inherent judicial authority and retain this case for disposition on the merits in light of the passage of time during which it had pended in this Court.

The evidence favorable to the State shows that in the early morning hours of April 10, 1979, appellant broke into a house on East Blackford in Evansville while the owner of the house and her companion were

asleep in the bedroom, and stole the owner's purse and seventeen dollars in cash from the companion's wallet.

## I.

Before the trial, appellant filed a motion to suppress, as irrelevant and prejudicial, evidence that he was also a suspect in another break-in one hour and twenty minutes later that morning on Henning, about eight blocks away from the Blackford Avenue house. The court granted the motion.

In the course of the trial, Officer Pointer, a crime scene technician for the Evansville Police Department, was called as a witness for the State. His testimony concerned his search, shortly after the break-in occurred, for physical evidence left by the intruder on East Blackford. He said that he had lifted partial fingerprints from the bedroom doorknob but was unable to lift any fingerprints from the window the intruder apparently used to enter the house, and that the doorknob prints were too poor in quality to be matched to defendant's prints. During this direct examination, the prosecution asked Officer Pointer why he returned to the Blackford house a second time that morning. Pointer replied:

> A person had been apprehended at the address on Henning. The general description of this person was close to the description that had been given by the lady on Blackford. We thought it to be a good idea to take this person by to see if the two might have been the same person on both offenses.

Appellant immediately moved for a mistrial because this testimony introduced evidence that the trial court had ruled was inadmissible. The trial court denied the motion but admonished the jury to disregard the question and answer. Appellant urges us to reverse the conviction because the admonition was insufficient to cure the prejudice created in the minds of the jurors by evidence of his involvement in another crime.

Appellant argues that his case is similar to *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312, a case in which this Court re-

versed a theft conviction because at trial a police officer testified, in answer to a question regarding what the occasion was for his seeing the defendant, "[t]hat's when this man was brought into our department with reference to an armed robbery case in our city."

The appellant points to our holding in that case that the prejudice engendered by the reference to another crime could not be cured by an admonition, and to our discussion of the burden on the appellant to show that he was harmed. We said:

> The State apparently labors under the erroneous belief that in such cases as these, the burden is upon the party claiming error to conclusively demonstrate that the error caused the verdict to be what it was and that it would have been otherwise had the error not occurred. True, the burden is upon him to show that he was harmed; but this is done when it is made, by all the circumstances, to appear that the error placed him in a position of grave peril to which he should not have been subjected. 257 Ind. at 77–78, 272 N.E.2d at 319–20.

In *White* it was apparent that the "sole purpose of calling the witness was to wield the *evidential harpoon,* deliberately calculated by counsel to prejudice the jury against the defendant and his defense." (Original emphasis.) 257 Ind. at 76, 272 N.E.2d 312.

We further said:

> While this Court is generally reluctant to override the decision of a trial judge in his determination that error was harmless, in view of an admonition, we feel that where there are serious conflicts in the evidence entitling the jury to go either way upon the issue of guilt or innocence, it is especially important that they not be subjected to improper influences. In such a case, the defendant should be given the benefit of reasonable doubts; and in a case such as this, where the error was deliberately committed and amounted to misconduct on the part of counsel, intervention becomes more compelling. 257 Ind. at 76–77, 272 N.E.2d at 319.

In *Hightower v. State*, (1973) 260 Ind. 481, 296 N.E.2d 654, this Court was confronted with a claim that admonitions to the jury were inadequate to cure prejudice and a motion for mistrial should have been granted in a trial in which the prosecutor asked many leading questions and continually called for hearsay testimony. The defendant in *Hightower* claimed that the very number of objections could taint the fairness of the trial and mandate reversal irrespective of the fact that the trial court had consistently ruled in defendant's favor and consistently admonished the jury to disregard any improper evidence.

In that case we discussed different types of trial irregularities as grounds for mistrial, distinguishing between those that concern constitutional guarantees and highly prejudicial evidentiary harpoons on the one hand, and those that concern general fairness in the trial proceedings on the other hand. We said:

> When we are confronted with an appeal such as this ... which is grounded in general fairness and does not concern constitutionally guaranteed rights or highly prejudicial evidentiary harpoons, it would not be consistent with our function as an appellate court if the mere existence of an arbitrary number of simple leading questions or questions calling for hearsay answers would automatically require us to search the record and insure that the jury's verdict corresponded to our general sense of fairness. We cannot be called upon to substitute our sense of fairness for a jury's sense of fairness on such elastic, arbitrary and general grounds. When irregularities such as this are the ground of the appeal there should be a strong presumption that the jury was able to follow the admonitions of the trial court to disregard any hastily given evidence. In cases concerning an irregularity bearing on a constitutionally secured right or concerning an evidentiary harpoon we do undertake to assess the probable impact of the irregularity on the final verdict of the jury and we do require a high level of assurance that the irregularity did not affect the verdict be-

fore we will affirm the judgment. However in cases involving simple irregularities as here we may rely on a lower level of assurance concerning the impact on the jury because the likelihood of their effect on substantial rights is much less. If the appellant cannot demonstrate to us that these irregularities have had a discernible and apparent effect on the verdict of the jury we will not undertake to scrutinize the evidence at trial in relationship to the verdict of the jury and subject it to a test of fairness. 260 Ind. at 488–89, 296 N.E.2d at 659.

Under this analysis, the testimony here involved more than "general fairness" irregularities such as were present in *Hightower*.

At the same time, it is not the case here, as in *White*, that the witness was called solely to wield the evidentiary harpoon. Officer Pointer gave competent testimony concerning his search for physical evidence at the Blackford house. The question that elicited the testimony at issue, moreover, was not designed solely to bring in the inadmissible testimony, but was apparently designed to establish that the return trip to Blackford was to bring by a suspect for identification within a short time after the crime had occurred.

In *White* we felt particularly compelled to override the trial court's determination that an admonition would suffice to cure any prejudice because we found that the deliberate interjection of inadmissible evidence of other crimes amounted to misconduct by the prosecution. We did not, however, restrict our intervention to such blatant instances of prosecutorial misconduct.

■ The gauge is not exclusively the way in which the testimony entered the case but rather the probable impact of the irregularity on the verdict. We require a high level of assurance that there was no residuum of prejudice left after the jury was admonished. In this case the jury heard only a vague reference to "another offense." The defendant immediately asked to make a motion outside the presence of the jury. The jury was excused and a motion for

mistrial was made and argued. The trial court denied the motion and directed the prosecutor to instruct his witnesses not to make any reference to any specific address on Henning nor to make reference to any reason for the apprehension of the defendant. When the jury returned to the courtroom the trial judge addressed the jury as follows:

> I sustained the objection to the last question that was asked of Officer Pointer and am instructing you that you are to disregard both the question, the answer, and any inference from it and you are not to consider the question, the answer, and any inference therefrom in your deliberations as to the innocence or guilt of the defendant in this cause.

He then polled the jurors individually, asking if there was anyone "who thinks they could do that." Each juror answered, "yes." The trial proceeded.

█ As was the case in *White*, there was a serious conflict of evidence. Appellant presented an alibi witness who testified that appellant was at his home at the time of the crime. The State presented one of the burglary victims as an eyewitness who identified the appellant as the intruder who stole her purse. She saw the appellant's face in her lighted bedroom when she was awakened by the intruder. Nevertheless, the quality of the stricken testimony—the reference to "another offense"—was not the same as that in *White*, where the reference was to the defendant's having been brought into a police station in reference to an armed robbery case in the same city.

We do not believe, in light of the inadvertence of the remark, its vagueness as to the defendant's involvement in another crime, and the admonition to and polling of the jurors, that the testimony affected the verdict.

## II.

Appellant claims that the theft count is not supported by the evidence and is contrary to law. He was charged with having committed theft of lawful United States currency belonging to the house owner's companion. In reviewing a claim of insufficient evidence, we will neither weigh the evidence nor determine credibility, but we will examine the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence, direct or circumstantial, of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

█ Appellant argues that the evidence at trial failed to establish that any lawful United States currency found in his possession when he was arrested belonged to the companion. The evidence he claims, raised only a mere suspicion which could not warrant conviction. There was, he says, no evidence presented that the intruder who fled was seen in possession of or near the companion's wallet.

The evidence included an unequivocal identification of the appellant by the house owner as the man she saw at the foot of her bed. The companion testified that he was sure he had a ten, a five and one or two one dollar bills folded together in his wallet when he went to sleep, and that this cash was missing when he searched his wallet after the intruder awakened him. When the appellant was arrested two hours later he was found to have a ten, a five and two one dollar bills folded in his left front pocket. Ten dollars in cash was found in his right pocket.

There was circumstantial evidence from which the jury could have inferred that the appellant stole seventeen dollars from the companion.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.