**Eddie James SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–1083A337.**

Court of Appeals of Indiana, Fourth District.

Dec. 12, 1984.

Michael A. Dvorak, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Eddie James Smith was convicted after a jury trial of burglary, a Class C felony under IND.CODE 35–43–2–1 (1982). He raises three issues on appeal, but because we find the trial court erred in denying Smith's motion for a mistrial, we need address only that issue.

We reverse.

The relevant facts are as follows. In order to convict Smith on the instant charge, the state introduced testimony from several witnesses. Joseph Seese, the owner of the garage Smith allegedly burglarized, testified his garage was locked shut on the morning of August 23, 1982, when he left to go bowling. Mr. Seese's neighbor testified that she saw Smith walk slowly around the garage, open a side door, and enter it. South Bend Police Officer William Molnar testified that when he came to the scene he saw Smith run from the garage and throw a pair of pliers to the ground. Molnar also said he found a knob in Smith's pocket that had been taken from the handle of a lawn mower stored in Seese's garage with a lock around its handle. Finally, Officer Martin Gersey said Smith told him he had entered the garage to steal the property in it.

Smith then took the stand in his own defense. He admitted entering Seese's garage but denied doing so to steal. He said that he entered the garage to escape three men who had accosted him as he walked through the neighborhood. Smith also said that, before entering the garage, he had been submitting job applications to restaurants in the area. The prosecutor then sought to ask Smith whether he had not, in fact, been breaking into another garage earlier that morning. Smith's counsel objected to this evidence of prior unrelated criminal activity, and the court ruled the state could not introduce evidence of any break-in earlier that morning.

Despite this ruling, however, the prosecutor later called Officer Gersey in rebuttal and asked where Smith told Gersey he was earlier that morning. The following colloquy ensued:[1]

A He told me he was on Bowman Street.

Q Did he tell you what he was doing on Bowman Street?

A Yes. He told me he was breaking into a garage.

MR. DVORAK: Your Honor, could we approach the bench?

(And now the following conversation ensued outside the hearing of the jury:)

MR. DVORAK: I move for a mistrial.

THE COURT: This is absolutely amazing to me, Mr. Farner. I earlier said to you as long as we were going to talk about where and not conduct that I would permit the question.

MR. FARNER: You permitted this to be asked in the last trial. It all came out.

THE COURT: I don't care.

. . . . .

MR. FARNER: I didn't understand it. I thought you meant for the purpose of cross-examination you didn't want that to come out, and I thought there was a reason for that. I didn't understand that you meant I couldn't on rebuttal because you did allow it the last time.

THE COURT: You know what? If you'd open your ears it might be a little easier for you to understand. I think my words are clear. The mistrial is denied. I think we are talking about both impeachment and common scheme or design, but I'm going to tell you, you know, it is just amazing to me.

After denying Smith's motion for a mistrial, the trial court struck Gersey's testimony and admonished the jury to disregard it.

■ On appeal, Smith contends that the court's admonition was inadequate to cure the prejudicial effect of Gersey's improper testimony and that the court therefore erred in denying his motion for a mistrial. In reviewing similar claims, our supreme court has distinguished between cases in which the alleged misconduct concerned "general fairness in the trial proceedings" and those in which the prosecutor introduced a highly prejudicial evidentiary har-

---

1. Mr. Dvorak was Smith's trial counsel; Mr. Farner was the Deputy Prosecutor. The prior trial alluded to had ended in a mistrial when the jury was unable to agree upon a verdict.

poon. *Davis v. State*, (1981) Ind., 418 N.E.2d 203, 205; *Hightower v. State*, (1973) 260 Ind. 481, 296 N.E.2d 654, *cert. denied*, (1974) 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470. When the asserted misconduct affects merely the general fairness of the trial, there is a strong presumption that the jury was able to follow the trial court's admonitions. *Davis v. State, supra*, at 205. Where the prosecutor has introduced an evidentiary harpoon, however, "we ... require a high level of assurance that the irregularity did not affect the verdict before we will affirm the judgment." *Id.* (quoting *Hightower, supra*, at 489, 296 N.E.2d at 659).

In assessing an evidentiary harpoon's impact on the jury's verdict, we must consider whether there was a serious conflict in the evidence, whether the witness implicated the defendant in other crimes directly or only indirectly, and the extent to which the trial court admonished the jury. *See Davis, supra*. Under these criteria, a trial court's decision to deny a mistrial has been upheld where the evidentiary harpoon was inadvertent, the defendant's involvement in other crimes was indicated only vaguely, and the trial judge not only admonished the jurors but polled them to determine whether they would be able to obey the judge's admonition. *Id.* On the other hand, a trial court's denial of a mistrial has been reversed where the evidentiary harpoon was intentional and the evidence as to the defendant's guilt was in conflict. *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

Under the standards developed by our supreme court, we find the trial court erred in denying Smith's motion for a mistrial. It is clear to us, as it apparently was to the trial court, that the prosecuting attorney fully intended to elicit evidence that Smith had committed other, unrelated burglaries. Further, as in *White*, the testimony at issue here directly connected the defendant with criminal activity unrelated to the crime charged. The facts here are also similar to those in *White*—and distinguishable from those in *Davis*—in that the trial judge here did not question the jurors to determine whether they would be able to obey her admonition to disregard Officer Gersey's testimony.

Finally, the evidence at trial, while sufficient to sustain Smith's conviction, was not so free from conflict as to persuade us that Officer Gersey's disputed testimony had no effect on the jury's verdict. Officer Gersey testified that Smith said he entered Seese's garage to steal. This felonious intent was also indicated by testimony that Smith had tried to remove the handle of a lawn mower chained to the garage wall. Smith denied making any incriminating statements to Gersey, however, and said he entered the garage only to hide from three men who were chasing him. Thus, there was conflicting evidence at trial as to whether Smith entered the garage with the intent to commit a felony. In *White, supra*, faced with a similarly conflicting body of testimony, our supreme court said:

> The jury was confronted with determining whether to place the greater reliance upon the correctness of the identification by the State's witnesses or upon the integrity of the defendant and his alibi witnesses; for it is inescapable that if the prosecuting witnesses were accurate in their identification, not only the defendant, but his wife and her parents as well, committed unmitigated acts of perjury. We do not question the sufficiency of the evidence to sustain the verdict; but we cannot say with certainty that with such a difficult decision to make in the face of such conflicting testimony the jury was not influenced by the improper testimony of Officer Estes deliberately induced by the prosecutor, notwithstanding the admonition by the trial judge to disregard it.

*Id.* at 76, 272 N.E.2d at 319. Like the court in *White*, we cannot say with any certainty that the jury, in weighing this conflicting evidence, was not influenced by Officer Gersey's improper testimony.

The state attempts to distinguish this case from *White* by arguing that the evidence of a prior crime at issue here, unlike that in *White*, was properly admissible under some exception to the general rule that evidence of other criminal activity by the accused is inadmissible to prove his guilt.

Specifically, the state contends Smith's alleged statement that he had been breaking into another garage was relevant to prove his felonious intent in entering the Seese's garage later that morning. The state also contends this evidence of a prior break-in was admissible to "complete the story" of the crime charged.

██ It is settled that, while evidence of a defendant's prior unrelated crimes is generally inadmissible to prove guilt, such evidence may be admitted to prove intent, motive, or identification, or to "complete the story of the crime charged." *Tacy v. State*, (1983) Ind., 452 N.E.2d 977; *Cobbs v. State*, (1975) 264 Ind. 60, 338 N.E.2d 632; *Franks v. State*, (1975) 262 Ind. 649, 323 N.E.2d 221. The state's argument that Gersey's testimony was admissible under one of these exceptions, however, ignores the trial court's clear ruling that his testimony was inadmissible and should be stricken from the record. Further, since the only link between the two alleged break-ins was their proximity in time, we do not believe the testimony about the earlier break-in by Smith had sufficient probative value to justify an exception to the rule that evidence of prior crimes must be excluded.

██ Nor do we believe this evidence was admissible to impeach Smith. It is true that Smith's alleged statement to Officer Gersey was inconsistent with his testimony at trial about his activities on the morning he entered Seese's garage. Smith's whereabouts earlier that morning, however, were wholly collateral to the crime with which he was charged. Impeachment on such collateral matters is, of course, improper. *Gaston v. State*, (1983) Ind.App., 451 N.E.2d 360. We conclude that the prior crime evidence at issue here, like that in *White, supra*, was inadmissible and prejudicial to the defendant. Thus, under the standards established in *White* and cases following it, we hold that the trial court erred in denying Smith's motion for a mistrial.

The trial court's judgment is reversed.

MILLER, P.J., and CONOVER, J., concur.