

**FILED**

Apr 23 2019, 10:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie Kent Boots
Marion County Public Defender
Indianapolis, Indiana

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Stephen R. Creason
Deputy Attorney General

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Laketra Spinks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 23, 2019

Court of Appeals Case No.
18A-CR-1532

Appeal from the Marion Superior
Court

The Honorable Stanley Kroh,
Magistrate Judge

Trial Court Cause No.
49G03-1708-F5-31994

**Tavitas, Judge.**

# Case Summary

Laketra Spinks appeals her convictions for criminal recklessness, a Level 5 felony, and carrying a handgun without a license, a Class A misdemeanor. We affirm.[1]

# Issues

Spinks raises two issues, which we restate as:

    I.    Whether the trial court properly denied Spinks' request to exclude three witnesses who violated a separation of witnesses order.

    II.    Whether the trial court properly denied Spinks' motion for a mistrial.

# Facts

On July 1, 2017, Spinks, her boyfriend, and her baby went to Braids, a hair salon in Indianapolis. While waiting for a stylist, Spinks had a conversation with another customer, Robin Wilkins. A stylist, Funmilayo Clawore, began braiding Spinks' hair, but Spinks was unhappy with the quality of the braids and complained to Djenaba Sambakey, another stylist at the salon. Sambakey and Spinks argued over the braids, and Spinks slapped Sambakey's hand. Sambakey asked Spinks to leave the salon. Spinks told her boyfriend to leave with the baby and pulled a handgun from a baby bag. With twelve to fifteen

---

[1] We held oral argument in this matter on April 4, 2019, at Munster High School. We thank Munster High School and the Lake County Bar Association for their hospitality.

people in the salon, Spinks fired the handgun into the ceiling and left the salon in a red four-door car.

[4]     Several people that were inside the salon called 911. One of the callers reported that Spinks left in a red Hyundai Sonata and gave a license plate number. A few minutes later, another 911 caller, Steven Dorsey, reported that a motorist had thrown a gun out of the car window in the area of the salon. Dorsey reported the vehicle's license plate number, which was very similar to the license plate number reported earlier, and Dorsey waited by the Kel-Tec .22 magnum caliber handgun, which was in the grass, until the police arrived. The license plate number reported by Dorsey was registered to a red Hyundai Elantra owned by Mishak Duzobo. Officers learned that Duzobo and Spinks were leasing a residence together.

[5]     At the salon, officers found damage on the ceiling, a .22 magnum caliber cartridge casing on the floor, and an unfired .22 magnum caliber round on the floor. Wilkins and Sambakey later separately identified Spinks in photo arrays as the woman who fired the handgun in the salon. Spinks did not have a valid license to carry a handgun.

[6]     On August 29, 2017, the State charged Spinks with criminal recklessness, a Level 5 felony, and carrying a handgun without a license, a Class A misdemeanor. A jury trial was held in May 2018, and the jury found Spinks guilty of both charges.

[7]     At the start of the jury trial, Spinks moved for a separation of witnesses order, which the trial court granted. The trial court ordered:

> All witnesses subpoenaed in this case are to remain outside the courtroom during the trial. No witness should discuss his or her testimony, or expected testimony with any other witness. The attorneys are instructed to advise their witnesses of this order as soon as they arrive at the courthouse, if not done so already. An intentional violation could result in being found in contempt, or being excluded from testifying and the separation order remains in effect until closing arguments begin.

Tr. Vol. II pp. 6-7. There was no indication that the State's witnesses were in the courtroom when the trial court issued the separation of witnesses order.

[8]     After the jury was impaneled but before the opening statements or presentation of evidence, the trial court was advised by the deputy prosecutor during the lunch break that "there was likely a violation of the separation order." *Id.* at 21. The trial court held a hearing outside the presence of the jury and separately questioned three witnesses, Wilkins, Sambakey, and Clawore, regarding a conversation they had earlier that morning in the hallway outside the courtroom.

[9]     Wilkins admitted that the three witnesses discussed among themselves that morning how many gunshots they heard. Wilkins stated that she heard one gunshot but that the other two women stated they heard two gunshots. According to Wilkins, the women also saw Spinks in the hallway, and they said: "That's her." *Id.* at 26. Wilkins testified that she recognized Spinks "on

her own" and that, at the jury trial, she would testify based only on what she observed. *Id.* Wilkins also affirmed that her trial testimony would not be influenced by the conversation with the other two witnesses.

[10] Sambakey testified that she had a conversation with the other witnesses but denied discussing the number of gunshots or the case. Sambakey promised that her testimony at the jury trial would be based only on what she observed and would not be influenced by what someone else said in her presence.

[11] Clawore denied having a conversation in the hallway with the witnesses about the case, and she denied knowing Wilkins.[2] Clawore also agreed that her trial

---

[2] Spinks contends that Clawore "testified she remembers about a conversation in the hallway was [sic] being asked if she could identify the person that did it and she said she wasn't sure." Appellant's Br. p. 8. Clawore's testimony was somewhat confusing. She testified:

> Q. And I understand you may have been talking to other witnesses, possibly today. And so at this time we want to find out what you talked about. You're not in trouble. You're not - there's not going to be any consequences for this, but we need to know if you did talk to any witnesses and what you may have talked about, if you did.
>
> A. Talk about what?
>
> Q. About the trial, or about the case, about what you're going to testify about or anything of this nature.
>
> A. No. *But only ask me a question about - he said - can I identify the person?*
>
> Q. Okay.
>
> A. *I said I'm not sure because I don't notice someone for the first time, only if I see the person often, then I can recognize if she's the one. But I'm not sure if she's the one. Like I say, I'm not sure, unless it's somebody (indiscernible) I'm the one.*
>
> Q. Okay. Did you talk about the case at all, about what happened that day at -
>
> A. Today? No.
>
> Q. Here today, in the courtroom or outside the office - out in the hallway or anything?
>
> A. Uhm-uhm, no.
>
> Q. Okay.

Tr. Vol. II pp. 36-37 (emphasis added). It is unclear when the emphasized conversation took place and with whom Clawore was talking. Clawore refers to "he," but the three witnesses at issue were women.

testimony would be based only on her observations and would not be influenced by what someone else said to her.

[12] Following the pretrial examination of the three witnesses, Spinks moved to exclude the three witnesses from testifying at the trial. The trial court found that "[t]here appears to have been a violation of the Court's separation order, but . . . the Court doesn't believe it was intentionally done." *Id.* at 46. The trial court gave Spinks leeway to cross-examine the three witnesses at the jury trial regarding the conversation but denied the motion to exclude them. Spinks then moved for a mistrial. The trial court found that Spinks had not been placed in a position of grave peril. The trial court did not believe that "exclusion" of the witnesses or a mistrial was appropriate. *Id.* at 48.

[13] During the State's presentation of evidence, Sambakey testified that Spinks shot the handgun two times. On cross-examination, Sambakey denied discussing the matter with Wilkins or Clawore on the day of the trial. Clawore testified that she heard one gunshot but found two bullets on the floor. She also testified that she could not identify the woman who shot the handgun. Clawore again denied discussing the matter with Wilkins or Sambakey on the day of the trial. Wilkins testified that the woman pulled the handgun out of her bag and shot the weapon. She identified Spinks as the shooter of the handgun. On cross-examination, Wilkins admitted that she had discussed with Sambakey and Clawore the number of shots that were fired and that they had "discussed the person that did this." *Id.* at 132.

Spinks then again requested a mistrial. Spinks argued that Sambakey and Clawore had committed perjury and that the three witnesses had violated the separation of witnesses order. The trial court found that Sambakey and Clawore were not native English speakers, that Wilkins had an independent basis to identify Spinks, and that Sambakey identified Spinks in a photo array after the incident. The trial court found that it was for the jury to determine the witnesses' credibility and that there was not an intentional violation of the separation of witnesses order. The trial court again denied the motion for mistrial.

The jury found Spinks guilty of criminal recklessness, a Level 5 felony, and carrying a handgun without a license, a Class A misdemeanor. The trial court sentenced Spinks to concurrent sentences of three years in the Department of Correction for the criminal recklessness conviction and one year for the carrying a handgun without a license conviction.

# Analysis

## I. Exclusion of Witnesses

Spinks first argues that the trial court erred by failing to exclude the three witnesses involved in violating the separation of witnesses order. Indiana Evidence Rule 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

(a) a party who is a natural person;

(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; or

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense.

Indiana Evidence Rule 615 allows litigants to move for separation of witnesses so they cannot hear each other's testimony. *Griffith v. State*, 59 N.E.3d 947, 956 (Ind. 2016).

[17] The trial court's order here, however, was more specific than Rule 615 by ordering no discussions of expected testimony among the witnesses. The trial court ordered:

> All witnesses subpoenaed in this case are to remain outside the courtroom during the trial. No witness should discuss his or her testimony, or expected testimony with any other witness. The attorneys are instructed to advise their witnesses of this order as soon as they arrive at the courthouse, if not done so already. An intentional violation could result in being found in contempt, or being excluded from testifying and the separation order remains in effect until closing arguments begin.

Tr. Vol. II pp. 6-7.

[18] The determination of the remedy for any violation of a separation order is within the discretion of the trial court. *Joyner v. State*, 736 N.E.2d 232, 244 (Ind. 2000). We will not disturb the trial court's decision on such matters absent a

showing of a clear abuse of discretion. *Id.*; *see also Wisner v. Laney*, 984 N.E.2d 1201, 1208 (Ind. 2012) ("We do not disturb a trial court's determination regarding a violation of a separation of witnesses order, absent a showing of a clear abuse of discretion."). "This is so even when the trial court is confronted with a clear violation of a separation order and chooses to allow the violating witness to testify at trial." *Joyner*, 736 N.E.2d at 244.

[19] "The primary purpose of a separation of witnesses order is to prevent witnesses from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly." *Morell v. State*, 933 N.E.2d 484, 489 (Ind. Ct. App. 2010). "Where there has been a violation of a separation order, the trial court, in the absence of connivance or collusion by the party calling the witness, may permit the witness to testify." *Id.* (citing *Heck v. State*, 552 N.E.2d 446, 452 (Ind. 1990)). "Even when confronted with a clear violation of a separation order, the trial court may choose to allow the violating witness to testify." *Id.* at 489-90 (citing *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995)).

[20] "[T]he common law presumption is that it is an abuse of discretion to exclude witnesses for violations of a separation order when the party seeking to call the witness had no part in the violation of the order." *Jiosa v. State*, 755 N.E.2d 605, 608 (Ind. 2001). Instead, trial courts "may issue contempt citations and permit evidence of witnesses' noncompliance to impeach their credibility." *Id.* The trial court may exclude witnesses if the party is at fault or the testimony does not directly affect the party's ability to present its case. *Id.*

[21]     The trial court found that there was a violation of the separation of witnesses order, and the parties do not seem to dispute this finding. The issue here, however, is whether the trial court's resolution of the issue was proper. Spinks argues that the three witnesses should have been excluded, while the State argues that the trial court properly allowed them to testify and to be subject to cross-examination on the incident. The State contends that the violation was unintentional, the State was not at fault for the violation, and Spinks was allowed leeway on cross-examination to explore the violation.

[22]     Spinks argues that this case is distinguishable from *Morell*, 933 N.E.2d at 489-91, in which three of the State's witnesses ate lunch together during the trial and one of the witnesses was apparently heard speaking on his cell phone regarding the case outside the courtroom. The trial court allowed the defendant to cross-examine the remaining witnesses regarding the alleged violation. On appeal, the defendant argued that the trial court should have questioned the witnesses under oath regarding the alleged violations. Our court concluded that the defendant had waived the argument by failing to object to the trial court's procedure. Waiver notwithstanding, (1) the defendant did not point to any affirmative evidence that the witnesses discussed their testimony; (2) the jury was informed that the witnesses, who were friends, ate lunch together; and (3) the witnesses denied in front of the attorneys that they discussed the case. We found no reversible error in the trial court's procedures.

[23]     According to Spinks, this case warrants a different outcome than *Morell* because "the jury was not in receipt of all the facts." Appellant's Br. p. 12. Spinks

contends that the jury was not aware of the witnesses' pretrial hearing testimony. Spinks seems to argue that she was prevented from discussing or cross-examining the witnesses based upon their pretrial hearing testimony. We do not find Spinks' argument persuasive. It is unclear from Spinks' argument how the witnesses' pretrial hearing testimony was different from their trial testimony and how Spinks was prevented from discussing or cross-examining the witnesses regarding that earlier testimony. Spinks' counsel did, in fact, cross-examine the three witnesses during the jury trial regarding the violation of the separation of witnesses order.

[24] We agree that the trial court's resolution to the violation was proper and within its discretion. Notably, Spinks' counsel did not request any contempt findings, and there is no indication that the violation was intentional. Although the trial court had several options to resolve the issue, the trial court held a pretrial hearing, allowed the witnesses to testify at the trial, and allowed Spinks' counsel leeway during cross-examination of the witnesses during the trial. The jury was left to determine the witnesses' credibility. The trial court did not abuse its discretion by allowing the three witnesses to testify at the trial.

## II. Mistrial

[25] Next, Spinks argues that the trial court should have granted her motions for a mistrial. "We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in 'the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008) (quoting *McManus v. State*, 814 N.E.2d

253, 260 (Ind. 2004), *cert. denied*, 546 U.S. 831, 126 S. Ct. 53 (2005)). "A mistrial is appropriate only when the questioned conduct is 'so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected.'" *Pittman*, 885 N.E.2d at 1255 (quoting *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.* "The remedy of mistrial is 'extreme,' strong medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level." *Lucio v. State*, 907 N.E.2d 1008, 1010-11 (Ind. 2009) (internal citations omitted).

[26] Spinks argues that she was deprived of her right to a fair trial because the jury "was not apprised of all facts thereby allowing it to make an informed decision." Appellant's Br. p. 14. Again, it is unclear what facts the jury did not know. The jury heard the testimony by the three witnesses, including the cross-examination regarding the separation of witnesses order. Spinks' argument on this point is not persuasive. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring arguments to be supported by cogent reasoning).

[27] In support of her argument, Spinks argues that *Ray v. State*, 838 N.E.2d 480 (Ind. Ct. App. 2005), *trans. denied*, is distinguishable. In *Ray*, the defendant claimed that the prosecutor violated the separation of witnesses order and moved for a mistrial. The motion was based on the testimony of Dr. Amy Burrows, the forensic pathologist, who testified that she discussed bruising on the victim's chest in the prosecutor's office on the day of her testimony and

learned that another medical witness had done a "sternum rub" on the victim. *Ray*, 838 N.E.2d at 486. The defendant claimed that the prosecutor violated the separation of witnesses order and moved for a mistrial. The trial court denied the defendant's motion.

[28] On appeal, the defendant argued that the "State gave Dr. Burrows ample time to prepare for defense counsel's attempts to impeach her with regard to the bruise and foreclosed defense counsel's opportunity to soften Dr. Burrows['] resolve to the possibility that the 'sternal rub' created [the victim's] bruise." *Id.* at 488. We held:

> Even assuming that the State violated the order separating witnesses, we cannot say that the violation placed Ray in grave peril. Prejudice is presumed when a violation of a separation of witnesses order occurs, but the presumption can be overcome if the non movant can show that there was no prejudice. *Stafford v. State*, 736 N.E.2d 326, 331 (Ind. Ct. App. 2000) (relying on *Hernandez v. State*, 716 N.E.2d 948, 955 (Ind. 1999) (Boehm, J., dissenting), *reh'g denied*), *reh'g denied*, *trans. denied*.
>
> Here, Ray's counsel cross-examined Dr. Burrows. Further, Ray's counsel questioned Dr. Burrows on how she learned that Blake had received a sternum rub. Thus, Ray was not placed in grave peril because the jury was informed of the conversation between Dr. Burrows and the prosecutor and was given adequate information to judge the credibility of Dr. Burrows. *See, e.g.*, *Hightower v. State*, 260 Ind. 481, 486, 296 N.E.2d 654, 657 (Ind. 1973) (holding that a violation of a witness separation order did not warrant reversal because "[t]he jury was completely informed of the conversation between the witnesses . . . and was given adequate information by which it could judge the reliability and credibility of the revised testimony"), *cert. denied*, 415 U.S. 916,

94 S. Ct. 1412, 39 L.Ed.2d 470 (1974). Moreover, the chest bruise was a relatively minor part of the evidence presented.

*Id.* We also noted that the conviction was supported by "overwhelming evidence" and that "any violation of the separation of witnesses order was harmless." *Id.*

[29] According to Spinks, *Ray* is distinguishable because the jury in *Ray* "was apprised of all the facts, allowing it to make an informed decision." Appellant's Br. p. 14. As noted above, it is unclear what facts Spinks believes the jury did not have.

[30] We conclude that Spinks has failed to demonstrate any prejudice from the violation of the separation of witnesses order. Spinks used the three witnesses' earlier testimony regarding the violations to cross-examine the witnesses and challenge their credibility. Moreover, the identity of the shooter was the main issue at trial, not the number of shots fired. Both Wilkins and Sambakey identified Spinks in photo arrays shortly after the shooting, and Wilkins identified Spinks as the shooter at the trial. Spinks has failed to demonstrate that she was placed in a position of grave peril or was prejudiced in any way by the violation of the separation of witnesses order. The trial court did not abuse its discretion by denying her motions for mistrial.

# Conclusion

[31] The trial court did not abuse its discretion by allowing the three witnesses to testify after they violated the separation of witnesses order, and the trial court did not abuse its discretion by denying Spinks' motions for mistrial. We affirm.

[32] Affirmed.

May, J. and Crone, J., concur.